UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VOLVO TRUCKS NORTH AMERICA, *a division of* VOLVO GROUP NORTH AMERICA LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Cause No. 1:12-cv-448-WTL-DKL |
| ANDY MOHR TRUCK CENTER, and ANDREW F. MOHR, | )<br>)<br>) |
| Defendants. | ) |

## ENTRY REGARDING DEFENDANTS' SECOND MOTION TO DISMISS

Before the Court is the Defendants' second motion to dismiss (dkt. no. 26).[1] The motion is fully briefed and the Court, being duly advised, now rules as follows.

### I.   STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes the facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff. The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and there is no need for detailed factual allegations. However, the statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)).

---

[1] The Defendants' first Motion to Dismiss (dkt. no. 13) is **DENIED AS MOOT** in light of the amendment of the Plaintiff's complaint.

## II.    BACKGROUND

The facts as alleged in the Amended Complaint are as follow. In 2009, the existing Indianapolis Volvo trucks dealer resigned its appointment amid dramatically declining sales. Defendant Andrew Mohr applied for the franchise. In support of his application, Mohr provided a "Dealer Application" to Plaintiff Volvo Trucks North America ("Volvo"). Defendants Mohr and Mohr Truck made "several promises, representations and unqualified guarantees in the Dealer Application" in their bid to convince Volvo to award the franchise to Mohr. Relying on those promises, Volvo ultimately awarded Mohr the franchise and the parties entered into a "Dealer Agreement."

Things have since gone south. Volvo now brings the instant action, asserting that Mohr and Mohr Truck have not fulfilled the "promises, representations and unqualified guarantees" that they made. As a result, Volvo alleges that it has suffered a reduced presence in the Indianapolis market; it has lost customers; and it continues to lose market share to its competitors. Volvo now seeks, *inter alia*, rescission of the Dealer Agreement or, in the alternative, damages for its reduced presence, lost profits, and dwindling market share, and it asserts the following causes of action against the Defendants:

I.     Fraudulent inducement;

II.    Promissory estoppel;

III.   Declaratory judgment;

IV.    Equitable estoppel (constructive fraud);

V.     Violation of the Indiana Franchise Disclosure Act; and

VI.    Breach of contract.

The Defendants have moved to dismiss Counts I, II, and IV – that is, fraudulent inducement, promissory estoppel, and equitable estoppel/constructive fraud. The Court addresses each claim and the relevant facts below.

### III.  DISCUSSION

#### A.  Fraudulent Inducement

In Count I, Volvo argues that the Defendants' assertions were (1) at the time they were made, false and untrue; (2) made with knowledge or reckless disregard as to their truth or falsity; and (3) intended to induce, and did induce, Volvo to award the franchise to Mohr and Mohr Truck. The "promises, representations and unqualified guarantees" of which Volvo now complains were set forth in the Dealer Application and include:

1. After the first year of appointment, Mohr Truck will capture "500+ OTR[2] Sales per year."

2. Mohr Truck "will promote and lead Volvo to a dominant market share position in Central Indiana."

3. Mohr Truck "will meet and secure 100% of the existing Volvo business."

4. Mohr Truck "will secure the former Sterling accounts."

5. Mohr Truck will "[c]reate a strong dealer image and brand."

6. During months 4-7, "Volvo will be on every deal in this market and not rest on existing customers as we continue to build the dealer brand."

7. During months 8-10, Mohr Truck will deliver "further growth through more new and used truck deliveries and continued aggressive marketing and sales."

8. During months 11-13, Mohr Truck "will be moving into a new facility with ribbon cutting and other celebratory acts associated with such a great commitment."

9. Mohr Truck will "commit the resources necessary to create a strong dealer image with proactive prospecting."

10. Mohr Truck will "leverage its local resources to support a branding campaign for logo, internet presence, and other mediums including but not limited to billboards, direct mail,

---

[2] "OTR" means "over-the-road."

> trade magazines, and attending trade shows. . . . We will continue this trend for the next six months in three-day increments."

11. Mohr Truck "will move Volvo operations into the existing Wabash Work Trucks facility located at 1301 South Holt Road. This location has served the heavy-duty truck industry for 40 years and will be a great fit during construction of the new facility. In addition, even though this is only temporary, [Mohr Truck] will still spend money on paint, signage, and the lot to make sure that the market immediately recognizes that change has occurred and the new ownership is very serious about market share and customer satisfaction."

12. Mohr Truck will build a new "Long Term Facility" which "will be state of art and is estimated to be between 40-60,000 sq. feet. Volvo will never be more proud."

13. Mohr Truck will place an initial parts order of $1,000,000 and "will have the part in stock and the other dealer will not."

14. Mohr Truck will buy five new parts delivery vans "to blanket the existing customer base and secure additional all makes parts business."

(hereinafter the "Dealer Promises"). The Defendants assert that Volvo's claim fails because the Dealer Promises are statements of future intention, which cannot be the basis of a fraudulent inducement claim. In response, Volvo argues that the Dealer Promises were "specific, verifiable, and constitute unqualified guarantees."

The elements of a claim for fraudulent inducement are (1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) which caused the plaintiff to rely on the misrepresentation to the plaintiff's detriment. *E.g.*, *Siegel v. Williams*, 818 N.E.2d 510, 515 (Ind. Ct. App. 2004). The alleged misrepresentation "may not be predicated upon representations of future conduct," *id.*, because it does not relate to past or existing facts. Accordingly, it is well-settled that a promise to do a thing in the future, although there may be no intention of fulfilling the promise, cannot form the basis of a fraudulent inducement claim. *E.g.*, *Klinker v. First Merchants Bank*, *N.A.*, 964 N.E.2d 190, 193 (Ind. 2012) (reaffirming the rule in dicta); *Vaughn v. General Foods Corp.*, 797 F.2d 1403, 1412-13 (7th Cir. 1986). Here, the

4

Dealer Promises of which Volvo complains are all promises of future conduct and cannot form the basis of Volvo's fraudulent inducement action.[3]

Volvo's attempt to cast the Dealer Promises as "unqualified guarantees," on which a fraudulent inducement claim may be based, is unavailing. An "unqualified guarantee" may indeed be exposed as false in the future, but it nevertheless remains grounded in present fact. For example, a salesman's statement that a product has no defects is a representation about the state of the product at that very moment – either the product has a defect or it does not – but whether the product is defective may not be revealed until sometime in the future. *See Whiteco v. Thielbar*, 467 N.E.2d 433, 437 (Ind. Ct. App. 1984) ("However, when the salesperson unqualifiedly guarantees his product to be free from defect, he is making an objective statement of fact.").[4] In this way, while the discovery of its truth or falsity may depend on events in the future, an unqualified guarantee is "an objective statement of fact," for it is "susceptible of 'exact knowledge' at the time the statement was made." *Vaughn*, 797 F.2d at 1411. In this case, reading

---

[3] As other judges of this Court have recognized, it is "not easy to reconcile" certain Indiana Court of Appeals decisions with this long-standing rule. *See Steak n Shake Enters., Inc. v. Varnson Grp.*, 2011 WL 5075135 at n.5 (S.D. Ind. 2011); *Simon Prop. Grp., L.P. v. mySimon, Inc.*, 2000 WL 1206575 at *2-3 (S.D. Ind. 2000). However, this Court "is not bound to follow the decisions of the lower Indiana courts except insofar as they serve as a good predictor of how the Supreme Court of Indiana might decide the question." *Lewis v. Methodist Hosp., Inc.*, 326 F.3d 851, 856 (7th Cir. 2003). The Indiana Supreme Court's reiteration of the rule earlier this year in *Klinker*, as well as the many other Supreme Court and lower court decisions applying the rule without exception, is a strong indicator that it would apply the rule as the Court has described it above.

[4] The salesman's statement is also actionable as a misrepresentation as to past or existing facts for another reason: in asserting that the product is free from defects, the salesman makes a representation as to his present knowledge – he *knows* the state of the product – but in fact he may not know. If the product turns out to be defective, then the falsity of his statement at the time he guaranteed the product is revealed: he did not know the state of the product. *See Rochester Bridge Co. v. McNeill*, 122 N.E. 662, 664 (Ind. 1919) ("Where a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not, and it is actually untrue, he is guilty of falsehood, even if he believes it to be true.") (quoting *Hadcock v. Osmer*, 47 N.E. 923, 923-24 (N.Y. 1897)).

5

the Dealer Promises in the light most favorable to the Plaintiff, one still cannot ground the promises in existing fact, nor can one expose them as verifiably false by reference to facts existing at the time the Defendants made them. Therefore, to the extent that Volvo's fraudulent inducement claim relies on the Dealer Promises, it fails to state a claim upon which relief can be granted.[5]

### B.     Promissory Estoppel

Volvo's second claim, entitled "Promissory Estoppel," alleges that Mohr made promises in the Dealer Application, which Mohr expected Volvo to rely on, and which induced Volvo's detrimental, reasonable reliance in the form of awarding Mohr the truck franchise. On its face, this claim sets forth the requisite elements. However, Mohr asserts that Volvo's claim fails because the Dealer Agreement covers the subject matter of the promises but does not include the actual promises of which Volvo complains, thus barring any claim for the preceding promises. In response, Volvo argues that the Dealer Agreement, which it alleges served as consideration for the "Dealer Application contract," is separate and distinct from the promises in the Dealer Application. The Dealer Application is itself a contract, Volvo argues, or in the alternative, the promises that would have formed the Dealer Application contract are independently actionable under the theory of promissory estoppel. Accordingly, Volvo argues that the fact that the separate Dealer Agreement does not contain the promises is of no moment.

In Indiana, "where the parties to an agreement have reduced the agreement to a written document and have included an integration clause that the written document embodies the complete agreement between the parties, the parol evidence rule prohibits courts from

---

[5] While the Defendants also assert that Volvo fails to state a claim as to what it calls the "Dealer Background Statements," see Am. Compl. at ¶ 13, Volvo itself never argues that these statements could satisfy the first element of its fraudulent inducement claim.

considering parol or extrinsic evidence for the purpose of varying or adding to the terms of the written contract." *Truck City of Gary, Inc. v. Schneider Nat'l Leasing*, 814 N.E.2d 273, 278 (Ind. Ct. App. 2004). Here, the Dealer Agreement contains an integration clause, which provides: "This document and attachments, addenda, and the Portfolio of Criteria represent the entire Agreement between the Company and the Dealer, superseding all prior oral or written agreements or other communications." Am. Compl., Ex. 2 at Art. 11.1. Therefore, as a matter of law, there are no effective promises by the Defendants that differ from the terms of the Dealer Agreement and the promises the Defendants made were superseded by the Dealer Agreement. Any reliance by Volvo on the Defendants' promises was legally unreasonable (not to mention colloquially unreasonable, given that it is Volvo's own contract that includes the integration clause). Therefore, because the first and third elements of a promissory estoppel claim are absent, Volvo has failed to state a claim based on these allegations.

### C. Equitable Estoppel/Constructive Fraud

With respect to Volvo's fourth claim, entitled "Equitable Estoppel (Constructive Fraud)," the Defendants argue that Volvo fails to state a claim because Volvo has not pled the requisite fiduciary, confidential, or other "special relationship" between the parties. In response, Volvo argues that the "unqualified guarantees" made by the Defendants support a constructive fraud claim in the absence of a fiduciary or confidential relationship.

The elements of a claim for constructive fraud are: (1) a duty owing by the party to be charged to the complaining party due to their relationship; (2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party as a proximate result thereof; and (5) the gaining of an advantage by the party

to be charged at the expense of the complaining party. *Siegel*, 818 N.E.2d at 515. While a duty most often arises from a confidential relationship, other special relationships may also cause a duty to arise between the parties. For example, the relationship between a buyer and a seller can, under certain circumstances, impose the requisite duty. In the absence of a confidential relationship, a claim for constructive fraud may exist where: (1) a seller makes unqualified statements to induce another to make a purchase; (2) the buyer relies on those statements; and (3) the seller has professed to the buyer that he has knowledge of the truth of those statements. *Stoll v. Grimm*, 681 N.E.2d 749, 757 (Ind. Ct. App. 1997). In this way, "[t]he law recognizes that in a buyer-seller relationship one party may be in the unique possession of knowledge not possessed by the other and may thereby enjoy a position of superiority over the other." *Id.*

  Here, Volvo concedes that no fiduciary relationship exists between the parties. Furthermore, it has not advanced any theory, nor pointed to any facts, from which the Court could conclude that it is plausible that any sort of buyer-seller relationship existed between Volvo and the Defendants. In the absence of any colorable argument giving rise to a duty on the part of the Defendants, Volvo's claim for constructive fraud must fail.

  Finally, the Defendants also argue that Volvo's claim fails because equitable estoppel is not an independent cause of action. *Pepkowski v. Life of Ind. Ins. Co.*, 535 N.E.2d 1164, 1167 (Ind. 1989) ("The doctrine of estoppel does not, in and of itself, constitute an independent cause of action."). In response, Volvo asserts that "equitable estoppel is not limited to defensive pleadings."

  The Court need resolve this dispute. "The basis for the doctrine of equitable estoppel is fraud, either actual or constructive, on the part of the person estopped." *Hysell v. Kimmel*, 834 N.E.2d 1111, 1115 (Ind. Ct. App. 2005). The Court has already held that Volvo fails to state


claims for fraud in the inducement and constructive fraud; accordingly, there is no fraud on which to base Volvo's equitable estoppel claim. Accordingly, this claim too must fail.

## IV.     CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss the Plaintiff's claims for fraudulent inducement, promissory estoppel, and equitable estoppel/constructive fraud is **GRANTED**.

SO ORDERED:  10/09/2012

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.