UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VOLVO TRUCKS NORTH AMERICA, *a division of* VOLVO GROUP NORTH AMERICA, LLC, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Cause No. 1:12-cv-448-WTL-DKL<br>) |
| ANDY MOHR TRUCK CENTER, and ANDREW F. MOHR, | )<br>)<br>) |
| Defendants. | ) |

**ENTRY ON MOTION FOR JUDGMENT ON THE PLEADINGS**

This cause comes before the Court on Mohr's motion for judgment on the pleadings. Dkt. No. 43. The motion is fully briefed, and the Court rules as follows.

## I.     STANDARD

In reviewing a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the Court applies the same standard that is applied when reviewing a motion to dismiss pursuant to Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.,* 499 F.3d 629, 633 (7th Cir. 2007). The Court "take[s] the facts alleged in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Id.* The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While there is no need for detailed factual allegations, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta*, 499 F.3d at 633 (citation omitted).

## II.  BACKGROUND

The facts as alleged in the Complaint are as follow. In 2009, the existing Indianapolis Volvo trucks dealer resigned its appointment amid dramatically declining sales. Defendant Andrew Mohr applied for the franchise. In support of his application, Mohr provided a "Dealer Application" to Plaintiff Volvo Trucks North America ("Volvo"). Defendants Mohr and Mohr Truck made "several promises, representations and unqualified guarantees in the Dealer Application" in their bid to convince Volvo to award the franchise to Mohr. Relying on those promises, Volvo ultimately awarded Mohr the franchise and the parties entered into a "Dealer Agreement."

Things have since gone south. Volvo now brings the instant action, asserting that Mohr and Mohr Truck have not fulfilled the "promises, representations and unqualified guarantees" that they made. As a result, Volvo alleges that it has suffered a reduced presence in the Indianapolis market; it has lost customers; and it continues to lose market share to its competitors. Volvo now asserts the following causes of action against the Defendants:

III.   Declaratory judgment;

V.    Violation of the Indiana Franchise Disclosure Act; and

VI.   Breach of contract.[1]

The "promises, representations and unqualified guarantees" of which Volvo now complains were set forth in the Dealer Application and include:

1.   After the first year of appointment, Mohr Truck will capture "500+ OTR Sales per year."

2.   Mohr Truck "will promote and lead Volvo to a dominant market share position in Central Indiana."

---

[1] Counts I, II, and IV were dismissed by order of the Court dated October 9, 2012. Dkt. No. 37. In reviewing this Entry, it has come to the Court's attention that a word was inadvertently omitted. Specifically, on page 8, the first sentence of the last paragraph should read: "The Court need *not* resolve this dispute."

3. Mohr Truck "will meet and secure 100% of the existing Volvo business."

4. Mohr Truck "will secure the former Sterling accounts."

5. Mohr Truck will "[c]reate a strong dealer image and brand."

6. During months 4-7, "Volvo will be on every deal in this market and not rest on existing customers as we continue to build the dealer brand."

7. During months 8-10, Mohr Truck will deliver "further growth through more new and used truck deliveries and continued aggressive marketing and sales."

8. During months 11-13, Mohr Truck "will be moving into a new facility with ribbon cutting and other celebratory acts associated with such a great commitment."

9. Mohr Truck will "commit the resources necessary to create a strong dealer image with proactive prospecting."

10. Mohr Truck will "leverage its local resources to support a branding campaign for logo, internet presence, and other mediums including but not limited to billboards, direct mail, trade magazines, and attending trade shows. . . . We will continue this trend for the next six months in three-day increments."

11. Mohr Truck "will move Volvo operations into the existing Wabash Work Trucks facility located at 1301 South Holt Road. This location has served the heavy-duty truck industry for 40 years and will be a great fit during construction of the new facility. In addition, even though this is only temporary, [Mohr Truck] will still spend money on paint, signage, and the lot to make sure that the market immediately recognizes that change has occurred and the new ownership is very serious about market share and customer satisfaction."

12. Mohr Truck will build a new "Long Term Facility" which "will be state of art and is estimated to be between 40-60,000 sq. feet. Volvo will never be more proud."

13. Mohr Truck will place an initial parts order of $1,000,000 and "will have the part in stock and the other dealer will not."

14. Mohr Truck will buy five new parts delivery vans "to blanket the existing customer base and secure additional all makes parts business."

(hereinafter the "Dealer Promises").

Mohr now moves for judgment on the pleadings as to the remaining claims against him.

### III. DISCUSSION

#### A. Breach of Contract

Volvo asserts that Mohr breached the contract between the parties when it (1) never intended to perform the Dealer Promises, and (2) thereafter failed to perform those promises. Am. Compl. at ¶ 42, No. 16. Of particular importance is Mohr's promise to build a new facility within a year of being awarded the dealership, a promise found in the section of Mohr's Dealer Application entitled "Business Plan." Andy Mohr Dealer Application and Information § 2, No. 16-1. Mohr contends that it is entitled to judgment on the pleadings as to this claim because the promises in the Dealer Application – the new facility included – are not part of the Dealer Agreement and are barred by the Dealer Agreement's integration clause.

In response, Volvo scrapes together an interpretation of the contract by which the Dealer Promises are incorporated into the Dealer Agreement through the "Portfolio of Criteria." Its theory runs as follows: The Dealer Agreement incorporates the "Portfolio of Criteria." Dealer Agreement at ¶¶ 1.6, 11.1, No. 16-2. The Portfolio of Criteria itself incorporates a "Dealer Business Plan" that sets forth the "sales and financial criteria" required of the Dealer. Dealer Agreement, Portfolio of Criteria at § 5, page 4, No. 16-2. Mohr's Business Plan in section 2 of his Dealer Application is the "Dealer Business Plan" referenced in the Portfolio of Criteria and therefore is incorporated into the Dealer Agreement.

However, in so arguing, Volvo spins a wholly unconvincing theory of the contract that would require disregarding large portions of the provisions Volvo cites. As an initial matter, the "Portfolio of Criteria" is defined as a "compilation of various minimum standards of criteria . . . *prepared by the Company*." Dealer Agreement at § 1.5, No. 16-2 (emphasis added). The "Company" here is Volvo. It should go without saying that the "Business Plan" in Mohr's Dealer

4

Application was prepared by Mohr. However, even setting aside what could perhaps have been inartful drafting, there are more substantive problems with Volvo's argument. The provision of the Portfolio of Criteria from which Volvo lifts the "Dealer Business Plan" requirement makes clear that, for Dealer Applicants, the Dealer Business Plan will be completed and executed following the decision to award the dealership:

> In instances where the designation "TBD" appears in this document, a representative(s) of the Company and of Dealer Applicant will meet in the event Dealer Applicant is awarded a Volvo Dealer Sales and Service Agreement, promptly after and [sic] such award is made, to discuss the parties' opinions pertaining to the information that is required to complete this Portfolio of Criteria. Based on those discussions, Company retains the right to determine the sales and financial criteria required to complete this Portfolio of Criteria. All Dealers are required to properly complete and execute a Dealer Business Plan, pursuant to Company's Policies and Procedures. The sales and financial criteria established in the Dealer Business Plan are an integral part of this Portfolio of Criteria.

Dealer Agreement, Portfolio of Criteria at § 5, page 4, No. 16-2. Volvo's theory is in direct conflict with the clear language of this section.[2] Volvo's theory is further belied by the fact that, in the "Sales Criteria" section of Mohr's Portfolio of Criteria, the minimum acceptable values for new truck sales, company annual parts purchases, initial company parts purchases, and initial company-required tooling purchases are designated "TBD."  This designation conflicts with Mohr's promise in his Dealer Application Business Plan –allegedly incorporated into the Dealer Agreement – to secure greater than five hundred over-the-road truck sales per year; if Volvo wished to incorporate Mohr's promise, it appears that this would have been the place to do it. In addition, the Portfolio of Criteria contemplates that Volvo may not approve of the facility designated by the Dealer Applicant and provides a section whereby Volvo may designate an

---

[2] The definition of the "Portfolio of Criteria" as "prepared by the Company" may be not entirely accurate, given that this provision incorporates into the Portfolio of Critieria a Dealer Business Plan "completed" by the Dealer.

5

"acceptable facility." That space is blank on Mohr's Portfolio of Criteria. In sum, Volvo's contrived theory of incorporation is simply untenable; the promises Mohr made are not incorporated into the Dealer Agreement. Enforcement of those promises is therefore barred by the integration clause, and Mohr is entitled to judgment on the pleadings as to Volvo's claim for breach of contract.[3]

### B. Indiana Franchise Disclosure Act

Volvo alleges that Mohr's conduct violates the Indiana Franchise Disclosure Act (the "IFDA"), specifically Indiana Code § 23-2-2.5-27.[4] Under that section, it is unlawful for any person in connection with the offer, sale, or purchase of any franchise directly or indirectly:

(1) to employ any device, scheme or artifice to defraud;

(2) to make any untrue statements of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of circumstances under which they are made, not misleading; or

(3) to engage in any act which operates or would operate as a fraud or deceit upon any person.

Volvo alleges that the Dealer Promises violate each of these three sections.[5] Unlike fraudulent inducement, "fraud" and "deceit" under the IFDA include "any promise or representation or

---

[3] While Volvo argues in its response to Mohr's motion that there is a question of fact regarding the scope of integration, it nevertheless wields the integration clause against Mohr in its motion for judgment on the pleadings. The Court finds no ambiguity in the contract as to its integration; it could not be clearer that the Dealer Application is not incorporated into the Dealer Agreement. Furthermore, they say that "what is sauce for the goose is sauce for the gander." This Court prefers its fowl without sauce – and disfavors use of this hackneyed phrase – but nevertheless finds it appropriate here.

[4] The IFDA creates a private right of action only for acts that constitute fraud, deceit, or misrepresentation. *Cont'l Basketball Ass'n v. Ellenstein Enters., Inc.*, 669 N.E.2d 134, 137 (Ind. 1996).

[5] With respect to the IFDA and the Indiana Unfair Practices Act, neither Mohr nor Volvo argues that these sections are wholly inapplicable to them. *See* Ind. Code 23-2-2.5-1; 23-2-2.5-2;

6

prediction as to the future not made honestly or in good faith." Ind. Code § 23-2-2.5-1. *Contra Hardee's of Maumelle, Ark., Inc. v. Hardee's Food Sys., Inc.*, 31 F.3d 573, 578 (7th Cir. 1994) (citing *Master Abrasives Corp. v. Williams*, 469 N.E.2d 1196, 1201 (Ind. Ct. App. 1984) and *Enservco, Inc. v. Indiana Sec. Div.*, 605 N.E.2d 256, 265 (Ind. App. Ct. 1992), *rev'd*, 623 N.E.2d 416, 423 (Ind. 1993)) ("At the time of the district court's decision, private recovery actions under § 27 required a showing of material misrepresentation of a past or existing fact."). Therefore, at least insofar as they relate to an act in the future, Volvo's allegations regarding the Dealer Promises are sufficient under the IFDA. Nevertheless, Mohr is entitled to the judgment on the pleadings as to this claim. The core elements of a claim under the IFDA are "a statement or omission, materiality, and falsity," *Enservco, Inc.*, 623 N.E.2d at 423, and the lower Indiana courts have also read a "reasonable reliance" element into fraud under the IFDA. *Hardee's*, 31 F.3d at 579 (citing *Master Abrasives Corp.*, 469 N.E.2d at 1201, *disapproved of on other grounds by Enservco*, 623 N.E.2d at 425). For reasons already explained, the integration clause renders Volvo's reliance on the Dealer Promises unreasonable as a matter of law. *See* Entry on Mot. to Dismiss at 6-7, No. 37. Mohr is therefore entitled to judgment on the pleadings as to Volvo's IFDA claim.

### C. Declaratory Judgment

In its third cause of action, Volvo seeks declaratory judgment in two forms: first, it seeks a declaration that there is no enforceable agreement between Volvo and Mohr by which Mohr is to be awarded a Mack Truck dealership. Second, Volvo seeks "a declaration of its right to effect termination of the Dealer Agreement" based on Mohr's alleged misconduct.

---

*Ford Motor Credit Co. v. Garner*, 688 F. Supp. 435 (N.D. Ind. 1988) (construing "manufacturer" and "dealer").

Mohr seeks dismissal of the first requested declaration on the ground that it is duplicative of Mohr's claims against Volvo for the Mack Trucks Misrepresentation. Of course, the term "duplicative" is inaccurate; no one could argue that the claims are the same. Rather, Volvo's claim is the mirror image of Mohr's claim. At any rate, Volvo responds that so-called "duplicative" claims are an improper proper basis for dismissal under Rule 12(c).

The Declaratory Judgment Act grants district courts discretion in determining whether to entertain such an action.[6] 28 U.S.C. § 2201; *e.g.*, *Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1133 (7th Cir. 2012). While the existence of another remedy does not preclude a declaratory judgment action, Fed. R. Civ. P. 57, "a court may properly decline to assume jurisdiction in a declaratory action when [another] other remedy would be more effective or appropriate." *City of Highland Park v. Train*, 519 F.2d 681, 693 (7th Cir. 1975). In a similar vein, where the resolution of the Defendant's counterclaim will effectively resolve the issue raised by the Plaintiff's claim for declaratory judgment, the court may dismiss the declaratory judgment claim. That is the case here; there is no need to separately assess Volvo's request for declaratory judgment because Volvo's claim adds nothing to what will already have been determined on resolution of Mohr's claim.[7] Accordingly, the Court is asserting its discretion to dismiss this claim, as it will be resolved when Mohr's counterclaims against Volvo are resolved.

---

[6] Volvo cites the Indiana Declaratory Judgment Act as the basis for the relief it seeks; however, the federal Declaratory Judgment Act, 28 U.S.C. § 2201, applies here. *See, e.g.*, *Inst. For Study Abroad, Inc. v. Int'l Studies Abroad, Inc.*, 263 F. Supp. 2d 1154, 1156-57 (S.D. Ind. 2001).

[7] Although Volvo contends that its claim is not duplicative of *its other claims*, Volvo does not argue that its claim is not the mirror image of Mohr's claim. *See* Volvo's Resp. at 18, No. 50.

In its second request, Volvo seeks a declaration of "good cause" to terminate the Dealer Agreement with Mohr. Specifically, under the contract, Volvo "may terminate [the agreement] on reasonable advance notice" for "[m]isrepresentation by the Dealer of a material fact in connection with: any application for appointment as a dealer for the Company." Dealer Agreement at ¶ 8.4.1(8), No. 16-2. Mohr contends that judgment on the pleadings of this claim is appropriate because Volvo has not pled any material fact that was misrepresented by Mohr.

Volvo alleges that Mohr made misrepresentations of material fact in the Dealer Application when he promised to sell more than 500 over-the-road trucks per year and committed to

> securing 100% of existing Volvo business; securing the accounts that the former Volvo Trucks dealer neglected; having Volvo Trucks on every deal in the market within 4 to 7 months from appointment because, by that time, Mohr Truck will have established parts routes, made its first set of fleet deliveries, have new and used stock on hand to perform this task, and the dealership employees will have completed all training and have all existing customer relationships on board.

Am. Compl. at ¶ 16, No. 16. Most significantly, Mohr also promised to build a new facility. *Id.* In addition, Mohr "buttressed" his promises with the following statements in the Dealer Application:

> [Mohr] "believes that investing in new, clean, attractive, modernized facility in desirable locations is a crucial part of the cost of doing business today, and that consistent reinvestment is a crucial part of the cost of doing business today, and that consistent reinvestment in his business pays big dividends. [Mohr] knows that consumers like to do business at places that are clean, comfortable, and customer friendly!"

As to Andy Mohr Buick GMC, Mohr represented:

1. "[Mohr] did an upgrade on the facility even though he didn't own the property."

2. "[Mohr] understands that new, innovative, and clean facilities are a cost of doing business in today's competitive automotive environment."

3. "The dealership moved into a "new state-of-the-art 90,000 square-foot facility."

9

As to Andy Mohr Chevrolet, Mohr stated:

4. "The dealership was operating out of a 50-year old facility on the wrong end of town. But [Mohr] again began to work his magic!"

5. "[Mohr] found an old bowling alley and within two months completely rehabbed the building into a much-improved Chevrolet dealership at a great location."

6. "For the second time in four years, he relocated the dealership, this time, into a brand new 50,000 sq. ft. facility. Quite a story!"

As to Andy Mohr Ford, Mohr explained:

7. "The previous dealership operated in what most would say was the worst dealership facility in Central Indiana."

8. [Mohr] moved the dealership to a new "Ford Trust Mark© facility in June 2000. The additional space allowed [Mohr] to really put his plan in place."

Mohr further represented that as to Andy Mohr Nissan, they invested "tens of thousands of dollars into its current facility to better serve its growing customer base."

While Mohr contends that none of these statements are actionable as misstatements of material fact, the Court disagrees. Some of the statements outlined above contain objective, verifiable facts,[8] and at this point, Volvo is entitled to the benefit of its allegation that these facts were both material and false as stated. Accordingly, Mohr's motion for judgment on the pleadings must be denied as to Volvo's claim for declaratory judgment on termination of the Dealer Agreement.

## D.  CONCLUSION

For the foregoing reasons, Mohr's motion for judgment on the pleadings is **GRANTED** as to Volvo's claim for breach of written contract, and violation of the Indiana Franchise Disclosure Act.

---

[8] Volvo did not cite these statements in support of its fraudulent inducement claim when Mohr moved to dismiss that claim. *See* Entry on Mot. to Dismiss at 6 n.5, No. 37.

Volvo's declaratory judgment claim regarding the Mack Trucks franchise is **DISMISSED**.

Mohr's motion for judgment on the pleadings as to Volvo's claim for declaratory judgment on termination of the Dealer Agreement is **DENIED**.

SO ORDERED: 06/14/2013

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.