| | | |
|---|---|---|
| **VOLVO TRUCKS NORTH AMERICA, a division of VOLVO GROUP NORTH AMERICA LLC,** | ) ) ) ) | |
| **Plaintiff,** | ) | **Cause No. 1:12-cv-448-WTL-DKL** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ANDY MOHR TRUCK CENTER, and ANDREW F. MOHR,** | ) ) | |
| | ) | |
| **Defendants.** | ) | |

## ENTRY ON VARIOUS MOTIONS

Before the Court are several motions: the Plaintiff's motion for summary judgment (dkt. no. 141) and supplemental motion for summary judgment (dkt. no. 160); the Defendants' motion for summary judgment (dkt. no. 179); Andy Mohr Truck Center's motion for leave to file a second amended complaint (dkt. no. 234); the Plaintiff's motion for reconsideration (dkt. no. 245); and the Plaintiff's motion to limit expert testimony (dkt. no. 143). All motions are fully briefed, and the Court rules as follows.

## I.     BACKGROUND

A brief factual background of the facts of this case is necessary to fully understand the claims made in the motions pending before the Court. Additional facts will be discussed when needed below.

The facts of this case arise out of a business relationship turned sour after Plaintiff Volvo Trucks North America ("Volvo") appointed Defendant Andy Mohr Truck Center ("Mohr Truck") as a new Volvo Trucks dealer. In early 2010, then-current central Indiana Volvo Trucks

and Mack Trucks dealer Shelby Howard announced that he was resigning as a Volvo Trucks franchisee. Howard had plans to obtain an International Trucks franchise and move it into the Volvo Trucks/Mack Trucks facility that Volvo helped him acquire. Much to Volvo's dismay, Howard made clear that he intended to keep his Mack Trucks franchise.

Seeing an opportunity for him to enter into the Class 8 heavy-duty truck market, Defendant Andy Mohr decided to pursue the possibility of acquiring the Volvo Trucks franchise for Indianapolis, Indiana. Specifically, Mohr was interested in combining a Volvo Trucks franchise with a Mack Trucks franchise. Mohr was, and still is, well known as a successful car dealer and businessman in the central Indiana area, operating Buick GMC, Chevrolet, Ford, Toyota, and Nissan dealerships.

Mohr met with Volvo representatives in March 2010, and submitted his Volvo Dealer Application ("the Dealer Application") on March 10, 2010. The Dealer Application included his personal background, history of his automotive group, and short and long term business plans. Among the representations made in the Dealer Application was that within 11 to 13 months from the date Mohr received the Volvo Trucks franchise, "we will be moving into a new facility with ribbon cutting and other celebratory acts associated with such a great commitment." After reviewing the Dealer Application, Volvo became "comfortable" with Mohr and his business plan.

On March 17, 2010, Mohr traveled to Greensboro, North Carolina to meet with various Volvo and Mack Trucks executives. Mohr alleges that during these meetings, Volvo executives represented that they would grant Mohr a Mack Trucks franchise in a separate transaction if Mohr first entered into a separate agreement to become a Volvo Trucks dealer ("the Mack Trucks Misrepresentation"). Specifically, Mohr alleges that the Volvo executives expressed

their animosity toward Howard and wanted to terminate his Mack Trucks franchise so Mohr could have a single Volvo Trucks/Mack Trucks franchise.  Keen on this idea, Mohr signed the Volvo Dealer Sales and Service Agreement ("the Dealer Agreement") on March 30, 2010, and opened for business as a Volvo Trucks dealer on April 20, 2010.

Unfortunately, after April 20, 2010, things turned south between Volvo and Mohr.  Under the impression that he would soon be awarded a Mack Trucks franchise, Mohr began looking for property for the combined Volvo Trucks/Mack Trucks franchise; he also spent money on improving the facility where the franchise was to be housed in the meantime.  It became clear sometime after July 2010 that Mohr would not be awarded a Mack Trucks franchise; the agreement Mack Trucks had with Howard did not give Volvo the right to terminate the franchise nor a right of first refusal in the event Howard wanted to sell.  Mohr was told that if he wanted the Mack Trucks franchise he would have to buy it from Howard; ultimately, however, Howard sold his Mack Trucks franchise to someone else.

In addition to the Mack Trucks Misrepresentation, Mohr claims that Volvo failed to "support" him as a Volvo Trucks dealer.  He alleges that because of this lack of support, he lost several would-be profitable deals, including bids for Heritage Environmental and the Indiana Department of Transportation, to other Volvo dealers.

For its part, Volvo claims that since Mohr was awarded the Volvo Trucks franchise, it has suffered from a reduced presence in the central Indiana area, has lost customers, and continues to lose market share to its competitors.  It claims that promises that were made by Mohr—specifically, the promise to build a new state of the art facility for the Volvo Trucks franchise—were never kept, to Volvo's detriment.

Volvo sued Mohr Truck and Mohr on May 22, 2012; Mohr Truck sued Volvo on June 22, 2012. The cases were consolidated into the present action. Many claims have been dismissed on motions to dismiss and motions for judgment on the pleadings. Volvo has a single declaratory judgment claim remaining against Mohr Truck and Mohr. Mohr Truck has an Indiana Unfair Practices Act ("IUPA") and an Indiana Deceptive Franchise Practices Act ("IDFPA") claim, a Crime Victims Act ("CVA") claim, and a breach of contract claim pending against Volvo.

With this background in mind, the Court turns to the current motions.

## II.     MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

On May 13, 2014, Mohr Truck filed a motion for leave to file its second amended complaint against Volvo (dkt. no. 234). Mohr Truck seeks to add two claims: 1) a claim for unfair discrimination under the IUPA and the IDFPA; and 2) a claim based on Volvo's bad faith effort to terminate Mohr Truck under both Indiana and federal law. Not surprisingly, Volvo objects.

Federal Rule of Civil Procedure 15 provides that "a party may amend its pleading only with . . . the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(3). As Mohr Truck notes, however, since it is seeking to amend its complaint after the deadline set forth in the case management plan, *see* dkt. no. 56 at 3, it has to show that good cause exists for the amendment. Further, the Seventh Circuit has noted that "[a]lthough leave to amend a complaint should be freely granted when justice so requires, *see* Fed. R. Civ. P. 15(a), the district court need not allow an amendment when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile." *Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 860-61 (7th Cir. 2001). With this standard in mind, the Court turns to the two claims Mohr Truck seeks to add.

## A.  Price Discrimination

Mohr Truck seeks to amend its complaint to bring a claim pursuant to the IUPA/IDFPA for price discrimination. *See* Ind. Code § 23-2-2.7-2(5) ("It is unlawful for any franchisor . . . to . . . [d]iscriminat[e] unfairly among its franchisees[.]").  Mohr Truck's reasons for wanting to add this claim are two-fold.  First, it claims that it pled a price discrimination claim in its complaint; therefore, this amendment merely seeks to "avoid any doubt in this regard [by] more explicitly plead[ing] this claim." Dkt. No. 235 at 2.  Second, it claims that it has "newly discovered evidence" that was only recently brought to light during the reopened discovery period.  Of course, these reasons are at odds with each other—either price discrimination has been a claim all along or it has not because Mohr Truck did not have the evidence (until recently) to bring such a claim.  Both cannot be true.

With regard to the first reason, Mohr Truck is correct that it did not have to plead legal theories in its complaint. *See Benuzzi v. Bd. of Educ. of City of Chicago*, 647 F.3d 652, 664 (7th Cir. 2011) ("[P]laintiffs in federal court are not required to plead with precision legal theories or detailed facts.").  Thus, simply because Mohr Truck did not cite to section five of the IDFPA does not mean that its complaint cannot be read to allege a claim for price discrimination.  In reading Mohr Truck's complaint,[1] the Court agrees that it is broad enough to encompass a claim for price discrimination under the IDFPA and IUPA.  For example, paragraph 47 alleges that "Volvo Trucks' price concessions in relation to other bids and accounts failed to provide sufficient dealer support to be competitive in the market."  Similarly, paragraph 3 states that "Volvo Trucks has refused to provide Mohr Truck the support necessary to make group and

---

[1] The complaint is docketed at Cause No. 1:12-cv-701-WTL-DKL (S.D. Ind. filed May 22, 2012), dkt. no. 17.

corporate sales." The Court agrees that a liberal and broad reading of these facts encompasses the allegation that Volvo's pricing was discriminatory as against him.

Volvo makes several objections to the amendment. First it argues that this Court has already rejected Mohr Truck's argument that it pled a price discrimination claim in its complaint. This is inaccurate. The magistrate judge noted in an order on discovery that "*[a]s Volvo notes, this is not a price discrimination case*," dkt. no. 173 at 4; however, this was not a dispositive order, nor was the issue before the Court to make that determination. This is, in fact, the first instance where this Court has the opportunity to rule on the precise issue.

Second, Volvo argues that Mohr Truck should have moved to amend its complaint "to avoid any doubt" in June 2013, when the magistrate judge first indicated her doubt that a price discrimination claim had been pled. In other words, it argues that Mohr Truck acted in a dilatory manner. The Court agrees that it would have been the best course of action for Mohr Truck to gain a firm, dispositive ruling on this issue before summary judgment motions were fully briefed. But, while it would have made matters more clear, it was not necessary for Mohr Truck to seek a motion to amend since the claim was pled in the complaint all along.

Next, Volvo argues that this claim is futile because Mohr Truck is not a franchise under the IUPA. Volvo makes this same argument in its motion to reconsider. For the reasons explained below, the Court does not agree, and Volvo does not make any other argument for why this claim is futile.

Finally, Volvo argues that it would be prejudiced if the Court allows Mohr Truck to amend its complaint. It notes that "discovery has closed [and] summary judgment motions have been filed and nearly fully briefed," dkt. no. 240 at 12; thus, adding this claim at this stage in the case, Volvo argues, deprives it of an opportunity to defeat it before trial. The Court disagrees.

In light of the recently-moved trial date, the parties will have a chance to meet with the magistrate judge regarding future discovery and/or additional dispositive motions; there is ample time for motions to be filed and resolved before the April 2015 trial date.

Accordingly, Mohr Truck's motion to amend its complaint to add a claim for price discrimination is **GRANTED**.

### B. Bad Faith Effort to Terminate

The second claim Mohr Truck seeks to add is a claim brought pursuant to the Automobiles Dealers Day in Court Act, the IUPA, and the IDFPA. Mohr Truck desires to add this claim in light of "[r]ecent testimony from the deposition of Denny Slagle, who was the Chief Executive Officer of Volvo during the relevant time period [that] reveals that Volvo's basis for terminating Mohr Truck was largely Andy Mohr's complaint about Volvo's false promises to provide him a Mack franchise." Dkt. No. 235 at 2. The pertinent portion of this deposition is as follows:

> Q: Andy Mohr's concerns about whether he was given a Mack dealership as promised didn't lead you to file a lawsuit, did it?
>
> A: It was part of it, yes.

Slagle Dep., dkt. no. 235-1 at 39. Based on this, Mohr Truck argues that "Volvo is asserting a right to terminate Mohr Truck in this litigation . . . to retaliate against Mohr for holding Volvo to its promise to provide him a Mack franchise." Dkt. No. 235 at 14.

In order to support its argument, however, Mohr Truck conveniently omits the next few lines of Slagle's deposition:

> Q: Okay. I stand corrected. Now, with respect to this fraudulent inducement claim—
>
> A: It was—*it was part of it in the context that the trust was gone*—

7

Q:      All right.

A:      —that we were being accused of something that we just simply didn't do.

Slagle Dep., dkt. no. 240-1 at 40 (emphasis added).[2]  The Court agrees with Volvo that Mohr

Truck took Slagle's comment out of context and

> ignore[d] entirely the basis upon which Slagle testified on why Volvo Trucks filed its complaint. . . . Volvo Trucks realized the relationship with Mohr and Mohr Truck was broken and that the parties no longer trusted one another, [and] Volvo Trucks sued for the return of the Dealer Agreement.

Dkt. No. 240 at 6 n.1.  This testimony suggests that Volvo sued Mohr and Mohr Truck because

their business relationship had deteriorated and it no longer trusted Mohr, not because "of a plan

to retaliate against Mohr for holding Volvo to its promise to provide him a Mack franchise." Dkt.

No. 235 at 14.[3]  Mohr Truck's motion for leave to file a second amended complaint is therefore

**DENIED** with respect to this claim.

For all of the foregoing reasons, Mohr Truck's motion for leave to file its second

amended complaint (dkt. no. 234) is **GRANTED IN PART and DENIED IN PART**.  **Mohr

Truck should file its new complaint—that only adds the price discrimination claim—within

seven days of the date of this Entry**.

---

[2] Mohr Truck's "Slagle Deposition Excerpts," dkt. no. 235-1, did not include page 40.

[3] To the extent that Mohr Truck alleges that the fact that Volvo filed a lawsuit *at all* was in bad faith because it affected Mohr Truck's customer relationships and/or generated negative publicity, the Court notes that this was something Mohr Truck alleged at the onset of litigation. *See* Cause No. 1:12-cv-701-WTL-DKL, dkt. no. 17, ¶ 3 ("Volvo Trucks chose to file a federal complaint replete with false statements in order to impair Mohr Truck's reputation and ability to compete in the market.").  Thus, this is not "newly discovered evidence" for which Mohr Truck should be permitted to amend its complaint at this stage in the case.

### III.    MOTION FOR RECONSIDERATION

On June 3, 2014, Volvo filed a motion for reconsideration (dkt. no. 245) of a former ruling, Entry on Motions to Reconsider (found at dkt. no. 157). A brief procedural background specific to this motion follows.

On January 25, 2013, Volvo filed a motion for judgment on the pleadings on Mohr Truck's complaint. The Court denied the motion with respect to Count II, the claim brought pursuant to the IUPA, and granted the motion with respect to Count IV, the breach of written contract claim (dkt. no. 112). In dismissing the breach of contract claim, the Court found that the limitation of remedies clause in the Dealer Agreement barred Mohr Truck's recovery. *See* dkt. no. 112 at 11. The limitations of remedies clause read as follows:

> ***NEITHER THE COMPANY NOR THE DEALER MAY RECOVER CONSEQUENTIAL DAMAGES, INCIDENTAL DAMAGES, OR OTHER INDIRECT OR SPECIAL DAMAGES OR LOSSES SUCH AS, BUT NOT LIMITED TO, LOSS OF:***
> · ***PROFITS***
> · ***GOODWILL***
> · ***BUSINESS OPPORTUNITY***

Dkt. No. 16-2 at 39 (so in original). Mohr Truck sought as damages for the breach of contract claim the impaired value of the Mohr Truck Volvo franchise. The Court, however, noted that "the value of a franchise is measured in terms of profit, goodwill, and business opportunity. Recovery for the impaired value of the franchise is thus recovery for the loss of profit, goodwill, and business opportunity, all of which are barred by the limitation of remedies provision." Dkt. No. 112 at 11. In a footnote, the Court noted that Mohr Truck "does not argue that the [limitations clause] is unenforceable." *Id*. at n.7.

9

Mohr Truck then filed a motion to reconsider that ruling arguing, predictably, that the limitations of remedies clause was unenforceable pursuant to Indiana Code section 23-2-2.7-1(10), the IDFPA, which provides, in relevant part:

> It is unlawful for any franchise agreement entered into between any franchisor and a franchisee who is either a resident of Indiana or a nonresident who will be operating a franchise in Indiana to contain any of the following provisions . . . Limiting litigation brought for breach of the agreement in any manner whatsoever.

The Court agreed with Mohr Truck and granted that motion on October 17, 2013, reinstating Count IV—although it noted that Mohr Truck should have raised the argument earlier (dkt. no. 157).[4]

Volvo's current motion for reconsideration pertains once again to Counts II and IV of Mohr Truck's complaint. The basis for the motion "centers on whether Mohr Truck is a 'franchise' within the meaning of the IDFPA. If Mohr Truck is not a 'franchise,' then Counts II and IV of the First Amended Complaint should be dismissed." Dkt. No. 245 at 1.[5] Not surprisingly, Mohr Truck objects.

The IDFPA defines "franchise" as follows:

> For the purposes of this chapter, franchise means any franchise as defined in IC 23-2-2.5-1, clauses (a) (1) (2) and (3), and any agreement meeting the provisions of IC 23-2-2.5-1, clauses (a) (1) and (2) which relates to the business of selling automobiles and/or trucks and the business of selling gasoline and/or oil primarily for use in vehicles with or without the sale of accessory items.

Ind. Code § 23-2-2.7-5. Indiana Code section 23-2-2.5-1, "the Franchise Act," thus provides the following definition of "franchise":

> (a) "Franchise" means a contract by which:

---

[4] It is ironic then, that the opening of Mohr Truck's response to the instant motion chastises Volvo for not raising these arguments earlier.

[5] The Court disagrees with Volvo's classification of this issue as "essentially one of standing" that the Court "must decide" and "has an independent obligation" to decide. Dkt. No. 255 at 11.

(1) a franchisee is granted the right to engage in the business of dispensing goods or services, under a marketing plan or system prescribed in substantial part by a franchisor;

(2) the operation of the franchisee's business pursuant to such a plan is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and

(3) the person granted the right to engage in this business is required to pay a franchise fee.

*"Franchise" includes a contract whereby the franchisee is granted the right to sell franchises on behalf of the franchisor. The term as defined in subdivisions (1), (2), and (3) does not include a contract where the franchisee, or any of its officers or directors at the time the contract is signed, has been in the type of business represented by the franchise or a similar business for at least two (2) years, and the parties to the contract anticipated, or should have anticipated, at the time the contract was entered into that the franchisee's gross sales derived from the franchised business during the first year of operations would not exceed twenty percent (20%) of the gross sales of all the franchisee's business operations.*

Ind. Code § 23-2-2.5-1 (emphasis added). Volvo does not dispute that Mohr Truck satisfies the first two elements (and need not satisfy the third element as it is exempt from paying the franchise fee). Rather, it argues that Mohr Truck fits into italicized language, also known as the "experienced franchisee exclusion," which was added by the Indiana General Assembly in 1993. Specifically, Volvo argues the following:

In this case, it is clear that the Legislature intended to tie the definition of franchise under the IDFPA to the definition of franchise under the more general Franchise Act to ensure consistency between the two interrelated statutory schemes which govern franchises. Because the IDFPA's incorporation by reference was incorporating the general law governing the definition of a franchise, the incorporation by reference includes any subsequent modifications or amendments to the definition of franchise, including the experienced franchisee exclusion that was added to the definition by the Legislature in 1993.

Dkt. No. 255 at 6. Volvo concedes, however, that no Indiana court has held that this exclusion applies to the IDFPA.

The Court agrees with Mohr Truck that this exclusion does not apply to the definition of "franchise" under the IDFPA.[6] The IDFPA specifically notes that "franchise means any franchise as defined in IC 23-2-2.5-1, *clauses (a) (1) (2) and (3).*" Ind. Code § 23-2-2.7-5 (emphasis added). The exclusion does not appear in either (a)(1), (2), or (3). The plain language of the statute, therefore, precludes Volvo's argument. Moreover, as Mohr Truck notes, the purpose of the IDFPA was to protect franchisees; it does not follow, therefore, that Indiana's General Assembly would want to exclude certain franchisees from those protections. Finally, the Court notes that the exclusion to the Franchise Act was added *after* the enactment of the IDFPA, and the General Assembly has not amended the IDFPA to specifically incorporate the exclusion language.[7] **Accordingly, the Court disagrees with Volvo that Mohr Truck is not a "franchise" and DENIES the motion to reconsider on this basis.**

Volvo's motion to reconsider raises an additional argument that is solely relevant to Count IV: that Mohr Truck is barred from using the IDFPA as a defense to render the limitations of remedies clause unenforceable because it is barred by the two-year statute of limitations. *See* Ind. Code § 23-2-2.7-7 ("No action may be brought for a violation of this chapter more than two (2) years after the violation.").

---

[6] Even assuming the exclusion did apply, Mohr Truck argues that it would be inapplicable to it as Mohr Truck has not been in the type of business represented by the franchise or a similar business for at least two years. Specifically, Mohr Truck notes that is has been in the automotive business, not the heavy truck business. The Court finds this argument to be persuasive, although ultimately that would be an issue for a jury to decide.

[7] The Court also notes that Mohr Truck's judicial estoppel argument is persuasive. *See Plaza Grp. Properties, LLC v. Spencer Cnty. Plan Comm'n*, 911 N.E.2d 1264, 1269 (Ind. Ct. App. 2009) ("Judicial estoppel prevents a party from asserting a position in a legal proceeding inconsistent with one previously asserted."). In Volvo's complaint, it specifically alleged that Mohr Truck was a franchisee: "Mohr Truck is a franchisee in 'the business of selling automobiles and/or trucks' and who otherwise meets the requirements set forth in Chapter 23-2-2.5-1, clauses (a)(1) and (2)[.]" Dkt. No. 16 ¶ 36. Now, it is asserting an inconsistent position. The Court does not agree with Volvo that this statement was merely a "general allegation."

Mohr Truck's first argument in opposition is that because it is using the IDFPA provision as a *defense*, the statute of limitations does not apply. This argument, however, seems to be foreclosed by *Anderson v. Indianapolis Indiana AAMCO Dealers Advertising Pool*, 678 N.E.3d 832 (Ind. Ct. App. 1997). In *Anderson*, Joseph Anderson and Mark Haines entered into a franchise agreement with the Indianapolis, Indiana AAMCO Dealers Advertising Pool ("the Ad Pool"). The agreement required Anderson and Haines to "be responsible for the payment of advertising on this local level as determined by [the] advertising pool." *Id*. at 834. Initially, Anderson and Haines paid the monthly advertising fee; however, when it increased, they stopped making the monthly payment and the Ad Pool sued them for breach of contract. Anderson and Haines argued that the payment provision violated the IDFPA because "it permits the Ad Pool to change the amount each member pays for advertising costs without setting a maximum amount." *Id*. at 835; *see* Ind. Code § 23-2-2.7-1(11).

In finding that Anderson and Haines could not raise this defense, the court of appeals noted the following:

> Even assuming that the advertising agreement is subject to the provisions of the Franchise Act, Anderson and Haines are not entitled to relief. *A franchisee who has signed a contract which violates the Franchise Act may bring an action to either recover damages or reform the franchise agreement. I.C. § 23-2-2.7-4. However, "no action may be brought for a violation of this chapter more than two (2) years after the violation." I.C. § 23-2-2.7-7.* Here, Anderson and Haines signed the advertising agreement in April 1986 but did not raise the alleged violations until 1994, eight years later. Thus, Anderson and Haines' allegations are barred by the statute of limitations

*Id*. at 836 (emphasis added). The dissenting opinion, however, disagreed and noted the following:

> [T]he Deceptive Franchise Practices Act's limitations for the bringing of an action does not automatically preclude the use of the Act for the raising of an affirmative defense. "Actions are barred but defenses are not." *Burton v. Martin Oil Serv., Inc.*,

295 F.2d 679, 681 (7th Cir. 1961) (quoting *Robinson v. Glass*, 94 Ind. 211, 216 (1883)).

*Id.* at 838-39. In response to the dissent, the majority explained its position further:

> The dissent contends that our determination that the Franchise Act was inapplicable as a defense for Anderson and Haines is incorrect because the statute of limitations, although it may bar claims, may not bar defenses. In support of this contention, the dissent cites *Robinson et al. v. Glass*, 94 Ind. 211, 216 (1883), which provides that "actions are barred but defences [sic] are not." However, the dissent fails to acknowledge the remainder of *Robinson*, which states:
>
>> A person who is sued upon a contract may show that it was procured by fraud, although more than six years elapsed before the action on the contract was instituted and the defence interposed. W*e speak now of pure defences, an* [sic] *not as to matters which may be relied upon as forming a foundation for a counter-claim or cross complaint.*
>
> *Id.* Anderson and Haines' defense that the contract violates the Franchise Act is *not a pure defense*. Rather, the Franchise Act specifically limits its own application to actions to recover damages or reform the franchise agreement. I.C. § 23-2-2.7-4. *It does not provide that it may be raised as a defense to actions seeking to enforce an agreement.* Thus, the limitation on the use of the statute of limitations in Robinson is inapplicable.

*Id.* at 836 n.1 (emphasis added).

Pursuant to *Anderson*, therefore, by claiming that the limitation of remedies provision is violative of the IDFPA, Mohr Truck is not asserting a pure defense because it could have brought an affirmative claim arguing as such. Under the rationale of *Anderson*, if Mohr Truck would not be able to use the IDFPA as a sword to eliminate the limitation of remedies clause by reforming the contract (or to sue for damages)—because more than two years have passed since the Dealer Agreement was signed—it may not use the IDFPA as a shield in defense of its breach of contract claim. *See ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012) ("In the absence of guiding decisions by the state's highest court, we consult and follow the decisions of intermediate appellate courts unless there is a convincing reason to

predict the state's highest court would disagree."). Pursuant to *Anderson*, Mohr Truck's use of the IDFPA as a defense is barred by the statute of limitations.

Mohr Truck's next argument is that the two-year statute of limitations did not begin to run at the time the Dealer Agreement was entered into, but rather started to run when Volvo attempted to invoke the limitation of remedies clause in the present action. However, Mohr Truck directs the Court to no case which has so held with respect to this particular provision of the IDFPA. Instead, Mohr Truck surmises that the Indiana Supreme Court would have so held had it been given the chance.

In *Kahlo Jeep Chrysler Dodge of Knightstown, Inc. v. DaimlerChrysler Motors Co., LLC*, the Indiana Court of Appeals was presented with a contractual provision that gave DaimlierChrysler the right to amend the franchise agreement. 835 N.E.2d 526 (Ind. Ct. App. 2005), *trans. granted*, *opinion vacated* (Feb. 21, 2006). The Dealers, Kahlo Jeep among others, sued, claiming this provision was violative of the IDFPA, specifically Indiana Code section 23-2-2.7-1(3), which states that it is unlawful to "[a]llow[] substantial modification of the franchise agreement by the franchisor without the consent in writing of the franchisee." The trial court granted summary judgment in favor of DamlierChrysler on statute of limitations grounds. On appeal, the Dealers argued that "the relevant event for triggering the two-year statute of limitations is when an attempt at substantial modification is made, not when the contract was originally executed." *Id*. at 529. The Court of Appeals rejected this:

> We must give effect to the intent of the legislature as evidenced by the plain language it has chosen to use in the [Indiana Deceptive Franchise Practice] Act. That intent clearly appears to be that causes of action for violations of Section 1 of the Act [labeled "Franchise Agreements; Unlawful Provisions] accrue when a contract containing an unlawful provision is executed and franchisees have two years from that date to challenge the provision, while a cause of action for violations of Section 2 of the Act [labeled "Franchise Agreements; Unlawful Acts and Practices] accrues when the franchisor engages in the prohibited conduct.

*Id.* at 533. As Mohr Truck notes, the case was appealed, and the Indiana Supreme Court granted transfer; however, one week later the parties settled and the appeal was dismissed. *See Kahlo Jeep Chrysler Dodge v. DaimlerChrysler Motors Co., LLC*, 844 N.E.2d 88 (Ind. 2006). The Supreme Court noted that the Court of Appeal's opinion "remains vacated and shall be held for naught." *Id.*

Based on this, Mohr Truck argues that "[t]he Supreme Court likely granted transfer in *Kahlo Jeep* in order to overrule a decision that had significant negative policy implications and was inconsistent with precedent." Dkt. No. 251 at 14. As Volvo notes, this is pure speculation, and it is not this Court's role to read into the Indiana Supreme Court's reason for granting transfer and apply "would-be" law to a claim brought under Indiana law. *See Knight v. Enbridge Pipelines (FSP) L.L.C.*, 759 F.3d 675, 677-78 (7th Cir. 2014) ("Counsel asserted at oral argument that *other* states have applied the Rule Against Perpetuities to transactions similar to this one, and he asked us to predict that Illinois would agree if given the chance. What a peculiar thing to say. The Owner could have given the state judiciary that chance but filed in federal court instead. *We take state law as it is rather than predicting novel developments*.") (emphasis added). Currently, *Anderson* is good law and specifically held that a franchisees' defense was time barred because the statute of limitations ran from the date the franchise agreement was signed. *See Anderson*, 678 N.E.3d at 836.

There is one additional case that merits discussion. In *Continental Basketball Ass'n, Inc. v. Ellenstein Enterprises, Inc.*, 669 N.E.2d 134, 139 (Ind. 1996), "[t]he Indiana Supreme Court [] interpreted Indiana Code § 23-2-2.7-4, which provides franchisees with a private right of action against franchisors for damages, as authorizing a private suit based not only upon any prohibited contents of the written agreement, but also suits based upon a franchisor's termination or failure

to renew the franchise without good cause." *Ray Skillman Oldsmobile & GMC Truck, Inc. v. Gen. Motors Corp.*, No. 1:05-cv-0204-DFH-WTL, 2006 WL 694561, at *2 (S.D. Ind. Mar. 14, 2006). The Indiana Supreme Court said the following:

> The Practices Act [the IDFPA] prohibits any provision in franchise agreements that provides for unilateral termination of a franchise without good cause or in bad faith, Ind. Code § 23–2–2.7–1(7), or that permits a franchisor to fail to renew a franchise without good cause or in bad faith, Ind. Code § 23–2–2.7–1(8). Section 23–2–2.7–4 of the Practices Act provides a cause of action for "[a]ny franchisee who is a party to a franchise agreement entered into or renewed after July 1, 1976 which contains any provision set forth in Section 1 of this chapter or who is injured by an unfair act or practice set forth in Section 2 of this chapter. . . ." *Therefore, the Practices Act expressly provides for a cause of action against the franchisor in cases where a franchise agreement contains a provision prohibited by the Practices Act, and/or where the franchise agreement is terminated without good cause or not renewed without good cause.*

*Ellenstein*, 669 N.E.2d at 139 (emphasis added). The termination claim, however, was not addressed further; rather, it was remanded to the trial court. *Id.*[8]

Based on this, Mohr Truck asserts the following: "Therefore, under *Ellenstein*, the unlawful [limitation of remedies] provision itself and the attempt to enforce it were actionable. The statute of limitations should not operate to bar an independently actionable claim for wrongful enforcement of an unlawful provision." Dkt. No. 251 at 14-15. The problem for Mohr Truck is that *Ellenstein* specifically referred to Indiana Code sections 23-2-2.7-1(7) and (8); there is no indication from the Indiana Supreme Court that section 23-2-2.7-1(10)—or any other section for that matter—were implicated by the above-quoted language. As this Court has noted before, its job is to take state law *as is*, not to create new causes of action. Based on all of the foregoing, the Court agrees with Volvo that Mohr Truck is precluded from asserting that the

---

[8] Continental Basketball Association, Inc. ("CBA") filed an interlocutory appeal after the trial court ruled that the Franchise Act was applicable to the case; thus, "[b]ecause the parties ha[d] not briefed the issue of whether CBA had good cause to terminate the franchise agreement and because this issue could [have] turn[ed] on a factual determination," the claim was remanded to the trial court. *Ellenstein*, 669 N.E.2d at 139.

limitation of remedies provision in the Dealer Agreement violates the IDFPA because the two-year statute of limitations has ran on that defense.

Finally, Mohr Truck argues that Volvo has waived this argument because it failed to raise the statute of limitations in its opposition to Mohr Truck's motion to reconsider. Dkt. No. 251 at 16. Moreover, it notes that motions to reconsider are not the appropriate time to raise new arguments. Volvo attempts to explain away its belatedness in raising this issue; its arguments are unconvincing and the Court agrees with Mohr Truck that the statute of limitations issue should have been raised in Volvo's opposition to Mohr Truck's motion to reconsider or in its summary judgment motion. That said, however, the breach of contract claim itself was resurrected because the Court granted Mohr Truck's motion to reconsider (dkt. no. 120) that belatedly raised an argument that should have been made earlier. Therefore, Mohr Truck cannot be heard to complain about this type of break.

For the foregoing reasons, Volvo's motion to reconsider (dkt. no. 245) is **GRANTED as to Count IV and DENIED as to Count II of Mohr Truck's complaint**. **Count IV of Mohr Truck's complaint, the breach of contract claim, is DISMISSED**.

## IV.   MOTIONS FOR SUMMARY JUDGMENT

Volvo seeks summary judgment on its declaratory judgment claim and on all of Mohr Truck's claims. Mohr Truck and Mohr filed a cross-motion for summary judgment on Volvo's declaratory judgment claim, and Mohr Truck opposes summary judgment being entered in favor of Volvo on any of its claims. The parties' arguments will be addressed below.

### A.  Volvo's Declaratory Judgment Claim

Volvo's sole remaining claim against the Defendants is its claim for "a declaratory judgment that good cause exists to terminate the Dealer Agreement on the terms and conditions

provided therein." Dkt. No. 16 at 13. Both the Defendants and Volvo seek summary judgment on this claim.

Volvo cites the Indiana Declaratory Judgment Act as the basis for the relief it seeks. As the Court has previously noted, *see* dkt. no. 113 at 8 n.7, the federal Declaratory Judgment Act applies to this case:

> The federal, rather than the state, Declaratory Judgment Act controls this litigation, despite the fact that this litigation was brought pursuant to Indiana statute and an Indiana trial rule. It is well established that "[u]nder the *Erie* doctrine [*Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938)], federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S. Ct. 2211, 135 L.Ed.2d 659 (1996). The federal Declaratory Judgment Act, codified at 28 U.S.C. § 2201, is a procedural statute that creates no substantive rights.

*Inst. For Study Abroad, Inc. v. Int'l Studies Abroad, Inc.*, 263 F. Supp. 2d 1154, 1156 (S.D. Ind. 2001). The federal Declaratory Judgment Act provides, in relevant part, that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. As noted above, Volvo seeks a declaration from this Court that it has good cause to terminate the Dealer Agreement pursuant to Article 8.4.1(8) which provides that Volvo "may terminate [the agreement] on reasonable advance notice" for "[m]isrepresentation by the Dealer of a material fact in connection with: any application for appointment as a dealer for the Company." Dkt. No. 16-2 at 31. To this end, Volvo alleges that the Defendants made a misrepresentation of material fact when they promised to build a new facility.[9]

---

[9] While Volvo includes many other statements that Mohr made in the Dealer Application in its motion for summary judgment, *see* dkt. no. 142 at 7-8 in its Reply, it clarifies that "Volvo Trucks does not argue that the representations about what Mohr did with his other motor vehicle dealerships are actionable misrepresentations under Article 8.4.1(8) of the Dealer Agreement."

The Defendants made the following promises to Volvo in the Dealer Application:

· "Months 11-13 we will be moving into a new facility with ribbon cutting and other celebratory acts associated with such a great commitment."

· "Interim Facility: AMTC [Mohr Truck] will move Volvo operations into the exiting Wabash Work Trucks facility located at 1301 South Holt Road . . . This location . . . will be a great fit during construction of the new facility."

· "Long Term Facility: There have been three parcels of land identified ranging from 13 to 17 acres. . . . The location will be state of the art . . . Volvo will never be more proud."

Dkt. No. 25-1, Section III. It is undisputed that no facility was ever built, although it appears that the Defendants did expend some money on "the facility" and/or on "facility upgrades." *See* dkt. nos. 184-24; 184-51.

Volvo and the Defendants present many reasons why each should be granted summary judgment on this claim; however, the Court need only address one. As has been a theme throughout this litigation, the integration clause, found at Article 11.1 of the Dealer Agreement, ultimately dooms Volvo's claim. It reads as follows: "This document and attachments, addenda, and the Portfolio of Criteria represent the entire Agreement between the Company and the Dealer, superseding all prior oral or written agreements or other communications." Dkt. No. 16-2 at 39. Absent from the Dealer Agreement is any obligation to build a new facility. The Defendants, therefore, argue that their "promise" to build a new facility was superseded by the Dealer Agreement.

Volvo argues that it is "foolish" to argue that Article 8.4.1(8) is superseded by the integration clause because "that provision is without a doubt a part of the Dealer Agreement." Dkt. No. 189 at 10. This argument misses the mark. While Article 8.4.1(8) itself is part of the

---

Dkt. No. 189 at 12. Thus, the only "misrepresentation" at issue is the promise to build a new facility.

integrated contract, *the promise to build a new facility is not*.  Volvo is using Article 8.4.1(8) as a vehicle to argue what it cannot due to the integration clause:  that the Defendants breached their promise to build a new facility. As the Court has previously noted, "the promises Mohr made are not incorporated into the Dealer Agreement.  Enforcement of those promises is therefore barred by the integration clause[.]" Dkt. No. 113 at 6; *see also* dkt. no. 196 at 9 ("Volvo seeks to use Article 8.4.1 of its Dealer Agreement to incorporate any prior negotiations, communications, and projections exchanged between the parties prior to the execution of the integrated Dealer Agreement, regardless [of] whether those terms were otherwise addressed by the parties' ultimate agreement.  Such an interpretation would negate the integration clause.").  Volvo's own Dealer Agreement set forth all of the Defendants' future obligations; if a new facility was critical to Volvo's willingness to give the Defendants a franchise, that obligation should have been in the Dealer Agreement.  Summary judgment is therefore **GRANTED** in favor of Mohr and Mohr Truck on Volvo's declaratory judgment claim.

## B.  Mohr Truck's IUPA Claim (Count II)

Volvo moves for summary judgment on Mohr Truck's IUPA claim.  Mohr Truck alleges that Volvo violated Indiana Code section 9-32-13-8[10] which provides that "it is an unfair practice for a manufacturer or distributor to violate IC 23-2-2.7."  Indiana Code section 23-2-2.7 is the IDFPA.  Specifically, Mohr Truck alleges that Volvo violated the following provision of the IDFPA:  "[u]sing deceptive advertising or engaging in deceptive acts in connection with the franchise or the franchisor's business." Ind. Code § 23-2-2.7-2(8).[11]  The "deceptive act" in

---

[10] In July 2013, the IUPA code sections were recodified; the Court will cite to the new Indiana Code sections throughout this Entry.

[11] As discussed above, Mohr Truck also asserts a claim under Indiana Code section 23-2-2.7-2(5):  "[d]iscriminating unfairly among its franchisees or unreasonably failing or refusing to comply with any terms of a franchise agreement."  In light of the parties' dispute about whether

which Volvo allegedly engaged in was the Mack Trucks Misrepresentation. *See* Cause No. 1:12-cv-701-WTL-DKL, dkt. no. 17, ¶ 61b ("Volvo Trucks engaged in deceptive acts, including the Mack Trucks Misrepresentation, in connection with Mohr Truck's business in violation of Ind. Code § 23-3-2.7-2(8).").

Volvo argues that the Mack Trucks Misrepresentation cannot form the basis for the IUPA/IDFPA claim because section two of the IDFPA "applies only to certain enumerated acts committed after the parties have entered into a franchise agreement." Dkt. No. 142 at 17. Because the Mack Trucks Misrepresentation occurred *prior to* the signing of the Dealer Agreement, Volvo argues that this claim fails. The Court agrees.

The pertinent section of the IDFPA begins as follows: "It is unlawful for any franchisor *who has entered into any franchise agreement with a franchisee* who is either a resident of Indiana or a nonresident operating a franchise in Indiana to engage in any of the following acts and practices in relation to the agreement[.]" Ind. Code § 23-2-2.7-2. Thus, a straightforward reading of the statute supports Volvo's argument that it only applies to certain conduct *after* a franchise agreement has been executed. Moreover, as Volvo notes, the other sections—(1) through (7)—"speak[] only to franchise practices that occur after the franchise is entered into[.]" Dkt. No. 189 at 17-18. For example,

> forcing a franchisee to order or accept unwanted inventory [Subsection 1(i)]; forcing a franchisee to order or accept modified inventory not publicly listed by the franchisor [Subsection 1(ii)]; forcing the franchisee to participate in certain prohibited ad campaigns or contests [Subsection 1(iii)]; requiring other agreements of the franchisee based on threats of cancelation or non-renewal [Subsection 1(iv)]; failure to deliver orders timely [Section 2]; denying a franchisee's family members from participating in the ownership upon the death of the franchise operator [Section 3]; franchisor-owned outlets that unfairly compete against the franchisee [Section 4]; discrimination among franchisees [Section 5]; franchisor obtaining

---

that claim was contained in Mohr Truck's complaint, that claim is not addressed in Volvo's motion for summary judgment.

> things of value from those with whom the franchisee does business [Section 6]; and franchisor price increases made after an order was placed [Section 7].

*Id.* None of these sections are applicable until the franchise relationship is established by the franchise agreement. It appears to the Court, therefore, that section eight should be interpreted in a similar fashion and in conjunction with the other sections.

In addition to the straightforward reading of the section itself, there is a different statutory provision that is applicable to deception that occurs prior to the execution of a franchise agreement: the Indiana Franchise Disclosure Act ("IFDA"). The IFDA makes unlawful certain conduct "in connection with the offer, sale or purchase of any franchise[.]" Ind. Code § 23-2-2.5-7. In fact, Mohr Truck brought a claim pursuant to the IFDA for the Mack Trucks Misrepresentation; however, that claim was dismissed due to the integration clause. *See* dkt. no. 112 at 7-8. As Volvo notes, it does not make sense that Indiana's legislature would enact duplicative statutes. Rather, interpreting the IDFPA section at issue to apply only to deceptive acts that occurred after the franchise relationship is established eliminates any unnecessary duplication.

Mohr Truck disagrees with this interpretation of the IDFPA. It argues that "[t]here is nothing in the DFPA that states the prohibited *conduct* must have occurred after the parties executed an agreement . . . Instead it provides that the relevant acts have been, broadly stated, 'in relation to the agreement.'" Dkt. No. 178 at 36. This ignores the first part of the section which begins, "[i]t is unlawful for any franchisor who has entered into any franchise agreement . . ." Ind. Code § 23-2-2.7-2. The franchise agreement necessarily must have been executed before this section can apply. This also supports Mohr Truck's argument that the IDFPA "is a remedial scheme targeted to protecting *actual franchisees*[.]" Dkt. No. 178 at 37 (emphasis added). In order to be an actual franchisee, the franchise agreement—which forms the relationship—is a

necessary predicate. In all, the Court finds Mohr Truck's arguments in opposition to this interpretation to be unconvincing.

Mohr Truck then argues that if the IDFPA only applies to deceptive conduct that occurs after the agreement is executed its claim should still survive because "Volvo executives made the Mack Trucks Misrepresentation both before and after that date." *Id.* Specifically, Mohr Truck alleges that in July 2010—after the Dealer Agreement was executed—Volvo representatives "indicated the company was making progress toward completing its obligation to provide the Mack Trucks franchise." *Id.* As Volvo notes, this argument "flies in the face of [Mohr Truck's] Complaint." Dkt. No. 189 at 19. Mohr Truck identifies the Mack Trucks Misrepresentation as follows:

> 21. Volvo Trucks, through its agents and executives Cook, Higgins, Winner, Thomas, Roy, Dawson, Kress, and others, represented (as stated more particularly in paragraphs 18 through 20) that it had the power to and would grant Mohr Truck a Mack Trucks franchise in a separate transaction and authorize Mohr Truck to operate a Mack Trucks franchise if Mohr Truck first entered into a separate agreement to become a Volvo Trucks dealer (the "Mack Trucks Misrepresentation").

Cause No. 1:12-cv-701-WTL-DKL, dkt. no. 17, ¶ 21. Paragraphs 18 through 20 provide the following:

> 18. Specifically, in March 2010, Cook represented (as did others) to Mohr that Volvo Trucks was unhappy with Indy Truck, that Volvo Trucks planned to deny approval for Indy Truck to sell the new brand in the current combined Mack-Volvo facility, and that Volvo Trucks could force Indy Truck to forfeit its Mack Trucks franchise. After terminating the franchise, Cook represented to Mohr that Volvo Trucks would put the two franchises "back together" so that the new Volvo Trucks dealer would operate a combined Volvo Trucks/Mack Trucks dealership. He represented that Volvo Trucks had the tools in the chest to terminate Indy Truck's Mack Trucks franchise.
>
> 19. On March 17, 2010, at Volvo Trucks' invitation, Mohr traveled to Greensboro, North Carolina to meet with various executives of Volvo Trucks and Mack Trucks. Among others, Mohr met with Brian Higgins, the National Manager of Dealer Development, Dennis Slagle, the President and Chief Executive Officer, David

> Winner, the Director of Regional Dealer Development, John Thomas, Senior Vice
> President of Distribution Development, Stephen Roy, Senior Vice President of
> Commercial Aftermarket, Bill Dawson, Senior Vice President of Customer
> Satisfaction, and Scott Kress, Vice President of Sales (collectively, the
> "executives").
>
> 20. During the course of Mohr's meetings, each of these executives (with the
> exception of Slagle) expressed dissatisfaction with Indy Truck. They, like Cook,
> affirmatively represented that they intended to "take Shelby [the owner of Indy
> Truck] out" and had the resources and clear capability to terminate Indy Truck's
> Mack Trucks franchise. They represented that they would then put the Volvo
> Trucks and Mack Trucks franchises back under one dealership in central Indiana.

*Id.* ¶ 18-20. It is clear from the complaint, therefore, that the Mack Trucks Misrepresentation

was the promise to give Mohr Truck a Mack Trucks franchise *which was made before franchise*

*agreement was executed*. In fact, paragraph 34 states just this: "Mohr Truck executed the

[Dealer] Agreement to operate the Volvo Trucks dealership with the understanding [that] Volvo

Trucks had agreed to grant it a Mack Trucks franchise in a separate transaction soon thereafter."

*Id.* ¶ 34. The fact that Volvo executives reiterated the promise at a later date does not change the

fact that the deceptive act which Mohr Truck complains about—and that which it alleges induced

it to become a Volvo Trucks dealer—was made before the franchise relationship was finalized.

Mohr Truck's attempt to argue otherwise contradicts its complaint, its assertions in prior briefs,

and its allegations in its own summary judgment brief. *See* dkt. no. 178 at 2 ("*In order to*

*persuade Mohr to take on the Volvo franchise*, the Volvo/Mack executives promised to terminate

Howard's Mack franchise and give it to Mohr so that Volvo/Mack could compete with Howard's

new International franchise head to head.") (emphasis added). Mohr Truck asserted a claim

under the IFDA for the Mack Trucks Misrepresentation; that claim was dismissed. It cannot now

twist the Mack Trucks Misrepresentation to fit into an IUPA/IDFPA claim. Summary judgment

is therefore **GRANTED** in favor of Volvo on Mohr Truck's IUPA claim (Count II).

## C. Mohr Truck's Indiana Crime Victim's Act ("CVA") Claim (Count III)

Volvo next moves for summary judgment on Mohr Truck's CVA claim. The CVA provides that a person who suffers a pecuniary loss as a result of a violation of Indiana Code 35-43 may bring a civil action against the person who caused the loss. Ind. Code § 34-24-3-1. In pertinent part, Indiana Code § 35-43-4-2 provides that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft." Control is "unauthorized" for purposes of the statute if it is exerted by, *inter alia*, promising performance that the promisor knows will not be performed. Ind. Code § 35-43-4-1(b)(6). Mohr Truck alleges in its complaint that Volvo "promised to perform on its agreement to grant Mohr Truck a Mack Trucks franchise despite knowing that it would not and could not perform." Dkt. No. 1:12-701-WTL-DKL, dkt. no. 17, ¶ 66. Mohr Truck argues that it never would have paid money to Volvo—used to obtain trucks, technology, tools, and parts—but for Volvo's false promises.

Mohr Truck's CVA claim suffers from a number of problems, but again, the Court need only address one. Volvo correctly notes that Indiana's "legislature did not intend for [the CVA] to apply to breach of contract disputes." Dkt. No. 142 at 26; *see also Long v. State*, 935 N.E.2d 194, 197 (Ind. Ct. App. 2010) ("The legislature did not intend to criminalize bona fide contract disputes."). As Volvo notes, Mohr Truck has already asserted that the Mack Trucks Misrepresentation was a breach of an oral contract or that the doctrine of promissory estoppel required this Court to enforce the Mack Trucks Misrepresentation; the Court, however, dismissed both of those claims. *See* dkt. no. 112. Thus, as Volvo notes, "Mohr Truck cannot criminalize its having to purchase Volvo-specific tools and technology when the alleged underlying act— inducing Mohr Truck into believing it also would be awarded a Mack Trucks franchise if it

accepted appointment as Volvo Trucks dealer—has been found legally insufficient to support a breach of oral contract." Dkt. No. 142 at 27.  Seventh Circuit precedent also supports this:

> Where there are well-developed contractual remedies . . . there is no need to provide tort remedies for misrepresentation.  The tort remedies would duplicate the contract remedies, adding unnecessary complexity to the law.  Worse, the provision of these duplicative tort remedies would undermine contract law. . . . [T]he "economic loss" doctrine . . . forbids commercial contracting parties (as distinct from consumers, and other individuals not engaged in business) to escalate their contract dispute into a charge of tortious misrepresentation if they could easily have protected themselves from the misrepresentation of which they now complain.

*All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 865-66 (7th Cir. 1999) (internal citations omitted).  Mohr Truck's allegation that its CVA claim is not a contract dispute is unconvincing; it provides nothing to support that strained argument. *See* dkt. no. 178 at 42 ("Volvo's argument that the Crime Victim's Act does not apply to pure contract disputes—while true—begs the question.  Mohr Truck's Crime Victim's Act claim is not a contract dispute.").  Mohr Truck is attempting to use the CVA as a means to resurrect its dismissed breach of contract claim; this is impermissible.  Accordingly, summary judgment is **GRANTED** in favor of Volvo on Mohr Truck's CVA claim (Count III).

### D.  Mohr Truck's Breach of Contract Claim (Count IV)

In light of the Court's ruling on Volvo's motion for reconsideration, Volvo's supplemental motion for summary judgment that pertains to this claim (dkt. no. 160) is **DENIED AS MOOT**.  The motion pertained solely to Count IV of Mohr Truck's complaint which, as a result of the motion for reconsideration addressed above, has been dismissed.

### V.      MOTION TO LIMIT EXPERT TESTIMONY

On September 6, 2013, Volvo filed a motion to limit expert testimony (dkt. no. 143).  On April 15, 2013, the Defendants' expert, Gary Kleinrichert, issued his expert report on the damages Mohr Truck incurred as a result of the Mack Trucks Misrepresentation.  His original

report, however, did not opine on certain issues as discovery was ongoing regarding Mohr Truck's breach of contract claim; accordingly, he reserved the right to supplement his report. Volvo, however, "objects to any amendment or supplementation of Defendants' expert report or any expansion of his testimony beyond that which is contained in his report dated April 15, 2013." Dkt. No. 143 at 6.

The Defendants note that "[i]nstead of raising a challenge to the substance of the expert's opinion, Volvo focuses on what he does *not* say." Dkt. No. 148 at 1. The Court concurs; essentially, Volvo asks the Court for an advisory opinion regarding an alleged supplementation that, at the time it filed the motion, had yet to occur.[12] It would not be appropriate for the Court to provide such an opinion. Accordingly, the motion (dkt. no. 143) is **DENIED**.

## VI.    CONCLUSION

For clarity's sake, the Court has resolved the pending motions as follows:

- · Volvo's motion for summary judgment (dkt. no. 141) is **GRANTED IN PART AND DENIED IN PART**.

- · Volvo's motion to limit expert testimony (dkt. no. 143) is **DENIED**.

- · Volvo's supplemental motion for summary judgment (dkt. no. 160) is **DENIED AS MOOT**.

- · The Defendants' motion for summary judgment (dkt. no. 179) is **GRANTED**.

- · Mohr Truck's motion for leave to file its second amended complaint (dkt. no. 234) is **GRANTED IN PART and DENIED IN PART. Mohr Truck should file its new complaint—that only adds the price discrimination claim—within seven days of the date of this Entry**.

- · Volvo's motion to reconsider (dkt. no. 245) is **GRANTED as to Count IV and DENIED as to Count II of Mohr Truck's complaint. Count IV of Mohr Truck's complaint, the breach of contract claim, is DISMISSED**.

---

[12] Mr. Kleinrichert did supplement his report on May 8, 2014. *See* dkt. no. 230-27. Volvo properly filed a motion to exclude the expert testimony contained in this report (dkt. no. 278). The Court will rule on this motion in due course.

SO ORDERED:  9/25/14

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication