UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANDY MOHR TRUCK CENTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 1:12-cv-00448-WTL-DKL |
| vs. | ) | |
| | ) | |
| VOLVO TRUCKS NORTH AMERICA, | ) | |
| a division of VOLVO GROUP NORTH | ) | |
| AMERICA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ANDY MOHR TRUCK CENTER'S SECOND AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

Andy Mohr Truck Center, Inc. ("Mohr Truck"), for its Second Amended Complaint against Volvo Trucks North America ("Volvo Trucks"), alleges and states:

**SUMMARY OF ACTION**

1.  Mohr Truck brings this action against Volvo Trucks to recover the damages it suffered due to Volvo Trucks' misrepresentations and multiple breaches of contract. Volvo Trucks, seeking to capitalize on Andy Mohr's strong reputation and proven track record of success, selected him to open a new dealership selling Volvo Trucks. In connection with these conversations, Volvo Trucks' agents and executives represented to Mohr that, if he agreed to operate the Volvo Trucks dealership, they would grant him a Mack Trucks franchise as well.

2.  Relying on these representations, Mohr Truck invested resources into the venture. At the time it agreed to open the Volvo Trucks dealership, Mohr Truck fully expected to benefit from the practical and financial synergies it knew would flow from being a combined Mack Trucks and Volvo Trucks dealer.

3. Not only did Volvo Trucks fail to honor its agreement to grant Mohr Truck a Mack Trucks franchise, it failed to support Mohr Truck's efforts to turn around Volvo Trucks' fortunes in the Indianapolis market. Contrary to both its contractual obligations to Mohr Truck and common industry practice, Volvo Trucks has refused to provide Mohr Truck the support necessary to make group and corporate sales. Volvo Trucks has also discriminated against Mohr Truck vis-à-vis other similarly situated Volvo Trucks dealers. Instead of supporting Mohr Truck, Volvo Trucks chose to file a federal complaint replete with false statements in order to impair Mohr Truck's reputation and ability to compete in the market.

4. Mohr Truck has suffered, and continues to suffer, damages on account of Volvo Trucks' failure to honor its agreement to grant Mohr Truck the central Indiana Mack Trucks franchise and refusal to comply with its contractual obligation to support the Volvo Trucks dealership.

## PARTIES

5. Mohr Truck is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Andy Mohr ("Mohr") is the President and owner of Mohr Truck and acted as its representative in the interactions with Volvo Trucks that are the subject of this litigation.

6. On information and belief, Defendant Volvo Trucks is a North Carolina corporation with a principal place of business in North Carolina.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

8. Venue is proper under 28 U.S.C. § 1391 because all or a substantial part of the cause of action occurred in this District.

## FACTS

### *Volvo Trucks Enlists Mohr Truck to Serve as Its Central Indiana Dealer*

9. After its long-time dealer in central Indiana surrendered the dealership in 2010, Volvo Trucks needed a prominent dealership presence in central Indiana. Prior to his resignation, the prior dealer's sales had fallen to only 15 trucks in 2009, leaving Volvo with virtually no market share.

10. Volvo Trucks encouraged Mohr Truck to open a Volvo Trucks dealership under the Mohr name, seeking to benefit from the goodwill and sales and service reputation of Andy Mohr and his automobile dealerships, which have operated with great success in the central Indiana region for years.

11. In late February 2010, Andy Mohr met with Sam Johnston, the Vice President of Dealer Development for both Mack Trucks, Inc. ("Mack Trucks"), and Volvo Trucks, at Andy Mohr's office. During that meeting, Johnston expressed frustration with Volvo Trucks' lack of representation in central Indiana and with the current central Indiana dealer, Indy Truck Sales ("Indy Truck"). Because Indy Truck was planning to give up its Volvo Trucks franchise in only a couple of months, Johnston emphasized Volvo Trucks' need to get a new dealer "up and running" quickly. Johnston was impressed with the success of Andy Mohr's automobile dealerships, as well as the fact that Mohr Truck had a facility and personnel sufficient to satisfy Volvo Trucks' needs immediately. Johnston indicated that putting the Volvo Trucks and Mack Trucks franchises back together in one dealership – as they were under Indy Truck's ownership – would be possible.

12. Shortly after his meeting with Mohr, Johnston sent an email to Lawrence Cook, the District Manager for Volvo Trucks North America, asking him to provide Mohr input on the market, including the customer base. Johnston emphasized to Cook that Mohr "is a successful entrepreneur" who "runs a high performance group of car dealerships as well as a commercial Ford Truck business" and that Mohr had "an individual with heavy truck experience" to help build that line of business.

13. On March 9, 2010, Brian Higgins, the National Manager of Dealer Development for both Volvo Trucks and Mack Trucks, sent Mohr dealer applications for both Volvo Trucks and Mack Trucks. Mohr understood the fact that Higgins sent both applications to be consistent with Johnston's prior representation that bringing the Volvo Trucks and Mack Trucks franchises back together under his ownership would be possible.

14. Mohr completed the Volvo Trucks dealer application and sent it to Johnston – along with a biography of himself and information about his dealerships – on March 10, 2010. At the time he completed the Volvo Trucks dealer application, Mohr understood, based on his initial conversation with Johnston, that there was a possibility he would be granted a Mack Trucks franchise as well.

*Mohr Truck Agrees to Take on a Volvo Trucks Dealership in Exchange for Volvo Trucks' Agreement to Also Grant Him a Mack Trucks Franchise*

15. Given the market in central Indiana and his previous experience, Mohr believed that combining the Volvo Trucks and Mack Trucks franchises under one dealership would yield substantial practical and financial synergies for Mohr Truck that would be unavailable from either franchise standing alone.

16. Mack Trucks is a subsidiary of Volvo and certain Volvo employees – including Johnston – cover both Volvo Trucks and Mack Trucks. More often than not dealers sell both

4

product lines. In fact, prior to its resignation as Volvo Trucks' central Indiana dealer, Indy Truck had sold both Volvo and Mack-branded trucks.

17. After Indy Truck resigned as Volvo Trucks' central Indiana dealer, Indy Truck planned to bring in a new brand to sell alongside Mack Trucks. Volvo Trucks was unhappy about this development and did not want Indy Truck to bring in this new brand. During the same time Johnston and Higgins were encouraging Mohr to become a Volvo Trucks dealer, they were also attempting to force Indy Truck to give up its Mack franchise. Volvo Trucks had invested a substantial amount in Indy Truck's facility and felt that Indy Truck's termination of the Volvo franchise amounted to a breach of trust – particularly because Indy Truck intended to move a competitor into the facility Volvo Trucks had financed.

18. In March 2010, Cook represented (as did others) to Mohr that Volvo Trucks was unhappy with Indy Truck, that Volvo Trucks planned to deny approval for Indy Truck to sell the new brand in the current combined Mack-Volvo facility, and that Volvo Trucks could force Indy Truck to forfeit its Mack Trucks franchise. After terminating the franchise, Cook represented to Mohr that Volvo Trucks would put the two franchises "back together" so that the new Volvo Trucks dealer would operate a combined Volvo Trucks/Mack Trucks dealership. He represented that Volvo Trucks had the tools in the chest to terminate Indy Truck's Mack Trucks franchise.

19. On March 17, 2010, at Volvo Trucks' invitation, Mohr traveled to Greensboro, North Carolina to meet with various executives of Volvo Trucks and Mack Trucks. Among others, Mohr met with Brian Higgins, the National Manager of Dealer Development, Dennis Slagle, the President and Chief Executive Officer, David Winner, the Director of Regional Dealer Development, John Thomas, Senior Vice President of Distribution Development, Stephen

5

Roy, Senior Vice President of Commercial Aftermarket, Bill Dawson, Senior Vice President of Customer Satisfaction, and Scott Kress, Vice President of Sales (collectively, the "executives").

20. During the course of Mohr's meetings, each of these executives (with the exception of Slagle) expressed dissatisfaction with Indy Truck. They, like Cook, affirmatively represented that they intended to "take Shelby [the owner of Indy Truck] out" and had the resources and clear capability to terminate Indy Truck's Mack Trucks franchise. They represented that they would then put the Volvo Trucks and Mack Trucks franchises back under one dealership in central Indiana.

21. Volvo Trucks, through its agents and executives Cook, Higgins, Winner, Thomas, Roy, Dawson, Kress, and others, represented (as stated more particularly in paragraphs 18 through 20) that it had the power to and would grant Mohr Truck a Mack Trucks franchise in a separate transaction and authorize Mohr Truck to operate a Mack Trucks franchise if Mohr Truck first entered into a separate agreement to become a Volvo Trucks dealer (the "Mack Trucks Misrepresentation").

22. On information and belief, each of the executives that made the Mack Trucks Misrepresentation knew that Volvo Trucks could not perform on this agreement because Indy Truck had rights to the Mack Trucks franchise, and Volvo Trucks' ability to influence Indy Truck's exercise of those rights had material limitations. In particular, on information and belief, these executives knew that Volvo Trucks had limitations on its ability to prevent the purchase of Indy Truck's Mack Trucks franchise by a third party.

23. Mohr understood at the time of the Mack Trucks Misrepresentation that Volvo Trucks and Mack Trucks franchises were usually jointly held and that the two brands were usually sold at the same facility.

24. In response to the Mack Trucks Misrepresentation, Mohr stated that he understood that the franchises would be brought back together in the near term and agreed to operate the joint Volvo Trucks/Mack Trucks dealership.

25. On March 24, 2010, Volvo Trucks sent Mohr Truck a letter of intent to award it the Volvo Trucks franchise. Based on Mohr's conversations with Volvo Trucks' executives during the Greensboro visit, Mohr Truck accepted this appointment on the understanding that Volvo Trucks had agreed to also grant it the Mack Trucks franchise, and that Volvo Trucks would convey those rights shortly thereafter in a separate transaction.

26. Mohr Truck relied on the Mack Trucks Misrepresentation and accepted the Volvo Trucks franchise based on the understanding that its business would benefit from the practical and financial synergies associated with a joint Volvo Trucks/Mack Trucks dealership. Moreover, Volvo Trucks is difficult to do business with, as its own National Manager of Dealer Development has admitted, making those anticipated synergies all the more important. On a March 19, 2010 Volvo Trucks' Regional Team Leadership Monthly Conference Call for the Central Region, Brian Higgins stated that "the challenge" in getting the Mohr Truck dealership up and running is that "we have a short time frame" and "we are difficult to do business with."

27. Volvo Trucks, through its agents and executives, made the Mack Trucks Misrepresentation and agreed to grant Mohr Truck a Mack Trucks franchise in order to secure the goodwill, reputation and financial resources of Mohr for its use in connection with the Volvo Trucks brand and to induce Mohr Truck to execute a Volvo Dealership Agreement within the "short time frame" imposed by Volvo Trucks.

28. In reliance on the Mack Trucks Misrepresentation that had, as discussed above, been made on multiple occasions by multiple Volvo representatives, Mohr began work in earnest

to prepare for an April 20, 2010 Volvo Trucks dealership opening. During this time, Mohr worked with a number of Volvo Trucks employees in parts, information technology, service, and sales training, including Lawrence Cook and Tom Ruble.

29. In addition, relying on the Mack Trucks Misrepresentation, Mohr explored various potential locations to take advantage of the increased presence and business synergies offered by the joint Volvo Trucks/Mack Trucks dealership. In particular, he engaged in multiple conversations with individuals at the Indianapolis mayor's office, including Michael Huber, the Deputy Mayor for Economic Development, and others, concerning the old airport space. He explored this prominent location as one option to increase visibility for the combined Volvo Trucks/Mack Trucks dealership.

### *The Parties Execute Volvo's Standard Dealer Sales and Service Agreement*

30. The parties executed a "Dealer Sales and Service Agreement" effective April 20, 2010 (the "Agreement"), which set forth various commercial terms associated with the Volvo Trucks dealership, a true and accurate copy of which is attached as Exhibit 1.

31. The Agreement grants Mohr Truck the right to sell Volvo Trucks under a marketing system prescribed in substantial part by Volvo Trucks. As reflected in the Agreement, the operation of the Volvo Trucks dealership is substantially associated with the Volvo Trucks trademark.

32. The Agreement's stated purpose is to "encourage and facilitate cooperation and mutual effort to satisfy customers," as well as to "help the Company and the Dealer fully realize their opportunities for business success." Exhibit 1 at 4.

33. The "Company's Responsibilities" under the Agreement include "effective sales, Parts, and service support," as well as "marketing and promotion efforts in support of Products."

8

Exhibit 1 at 4. The Agreement further provides that the Company will "support the Dealer in achieving its customer service objectives," Exhibit 1 at 9, and will support Dealer sales, including "special promotions designed to stimulate sales," Exhibit 1 at 20.

34. Mohr Truck executed the Agreement to operate the Volvo Trucks dealership with the understanding Volvo Trucks had agreed to grant it a Mack Trucks franchise in a separate transaction soon thereafter.

35. Mohr Truck expended resources, time and money to carry out the Agreement expecting to benefit from the substantial practical and financial synergies associated with operating a joint Volvo Trucks/Mack Trucks dealership.

36. Mohr Truck opened for business as a Volvo Trucks dealer on April 20, 2010.

### *Volvo Trucks Fails to Comply with the Mack Trucks Misrepresentation*

37. On July 14, 2010, approximately three months after Mohr Truck began operations as a Volvo Trucks dealer, Mohr had dinner with two Volvo Trucks executives, Ron Huibers, Senior Vice President of Sales and Marketing, and Fredrik Hogberg, Senior Vice President of Distribution Development.

38. At that dinner, Mohr asked Hogberg about the status of the formal award of the Mack Trucks franchise in central Indiana to Mohr Truck as the parties had agreed. Hogberg stated that it was "a matter of time" and that Volvo Trucks was "making progress" toward fulfilling its end of the bargain.

39. Mohr later heard that Volvo Trucks planned to allow Indy Truck to keep its Mack Trucks franchise. Upon hearing this news, Mohr called Hogberg immediately for an explanation. Hogberg said that Volvo Trucks had "no other choice" under the circumstances but reiterated that it remained "a matter of time" before the Indy Truck franchise was terminated. He

9

assured Mohr that Volvo Trucks would comply with its agreement to award Mohr Truck the Mack Trucks franchise when the time came.

40. Hogberg called Mohr several months later to inform him that, despite Hogberg's previous assurance to the contrary, Volvo Trucks was reneging on its agreement to grant Mohr Truck the Mack Trucks franchise held by Indy Truck. Hogberg stated that Indy Truck had sold its Mack Truck franchise to another dealer, M&K Quality Truck Sales, and that despite the Mack Trucks Misrepresentation, the franchise would not be awarded to Andy Mohr Truck Center. Hogberg stated that Volvo Trucks – despite numerous representations to the contrary – did not have the power to grant Mohr Truck the Mack Trucks franchise.

41. On information and belief, Volvo Trucks' executives were aware at the time each of them made the Mack Trucks Misrepresentation that Volvo Trucks could not perform on its agreement.

42. Mohr Truck invested a significant amount of time, money and other resources (including goodwill) into the Volvo Trucks dealership with the understanding and belief that Volvo Trucks would honor its agreement to grant Mohr Truck a Mack Trucks franchise in a separate transaction.

43. Volvo Trucks failed and refused to honor its agreement and has not otherwise authorized Mohr Truck to sell Mack Trucks.

44. Mohr Truck has been damaged by its reliance on the Mack Trucks Misrepresentation made by Volvo Trucks' agents and executives, including but not limited to the lost time and resources it has expended under the Agreement, impairment of goodwill associated with the Mohr name, lost opportunity costs, and lost profits.

### *Volvo Trucks Breaches the Dealer Sales and Service Agreement and Discriminates Against Mohr Truck*

45.     In addition to failing to honor its agreement to provide a Mack Trucks franchise, Volvo Trucks failed to fulfill its contractual obligations under the Agreement by failing to support Mohr Truck in selling Volvo Trucks products to customers.

46.     For example, the day after Mohr Truck opened the Volvo Trucks dealership, Lawrence Cook sent Mohr an email explaining that Heritage Transport, LLC, an Indianapolis-based company, was interested in purchasing 16 trucks for approximately $1.6 million.  Rather than support Mohr Truck's efforts to secure that business, however, as it was contractually obligated to do, Volvo Trucks did not provide the required assistance to its brand new dealer.

47.     Volvo Trucks discussed adding the new trucks to a preexisting order, which was to run through the Indianapolis dealer (now Mohr Truck).  However, upper level management ultimately rejected that solution and made Mohr Truck compete with its prior central Indiana dealer's Fort Wayne facility for the business.  As a result, Heritage purchased the trucks from the Fort Wayne dealership.

48.     In addition, shortly after Mohr raised the issue of the Mack Trucks Misrepresentation at the dinner in July 2010, Volvo Trucks began providing materially less pricing support to Mohr Truck vis-à-vis its other dealers.  For example, within a one day period in October 2010, Volvo Trucks gave its Michigan dealer a price concession in excess of 6% greater than the concession offered to Mohr Truck for a 100-truck transaction involving the same model of truck.  This disparity amounted to thousands of dollars per truck.

49.     Volvo trucks continued to provide Mohr Truck materially lower concessions than those offered to other dealers for transactions involving the same model of truck along a number of dimensions including new truck price and warranty, among others.

50. Moreover, Volvo Trucks' price concessions in relation to other bids and accounts failed to provide sufficient dealer support to be competitive in the market. Mohr Truck lost its bids on a number of transactions due to Volvo Trucks' discrimination against Mohr Truck and failure to offer competitive concessions.

*Volvo Trucks Retaliates Against Mohr and Mohr Truck by Filing a Lawsuit*

51. Volvo Trucks' retaliation against Mohr did not stop with inadequate and discriminatory price concessions. After Mohr complained about Volvo Trucks' failure to live up to its agreement to provide a Mack Trucks franchise, Volvo Trucks endeavored to drum up a basis for terminating Mohr Truck as a Volvo dealer.

52. With the goal of terminating Mohr Truck, Volvo Trucks filed a lawsuit against Mohr Truck and Mohr personally. The impetus for this lawsuit was not based on Mohr Truck's performance – it had only been a dealer for approximately a year when Volvo Trucks began contemplating litigation – but rather on Mohr's insistence that Volvo Trucks live up to its bargain. Volvo Trucks' lawsuit was interposed for the improper purpose of coercing and intimidating Mohr into giving up his franchise and declining to pursue his claims based on the Mack Trucks Misrepresentation.

## COUNT I

## UNFAIR PRACTICES UNDER IND. CODE § 9-32-13

Mohr Truck, for Count I of its Second Amended Complaint against Volvo Trucks, alleges and states:

53. Mohr Truck incorporates Paragraphs 1 through 52 as if fully set forth herein.

54. Mohr Truck is a dealer as that term is defined in Ind. Code § 9-13-2-42 because it sells at least twelve (12) vehicles to the general public each year for delivery in Indiana.

55. Volvo Trucks is a manufacturer and/or a distributor under the express terms in Ind. Code § 9-13-2-97 and Ind. Code § 9-13-2-45, respectively.

56. Volvo Trucks engaged in unfair practices under Ind. Code § 9-32-13-8 by violating the Indiana Deceptive Franchise Practices Act, Ind. Code § 23-2-2.7.  Specifically, Volvo Trucks violated Ind. Code § 23-2-2.7-2 because:

   a. Mohr Truck's Volvo Trucks dealership is a franchise within the meaning of Ind. Code § 23-2-2.7-5; and

   b. Volvo Trucks discriminated against Mohr Truck by providing it less favorable support than other Volvo Trucks dealers for the same model of truck under substantially similar circumstances, including similar marketing and financial conditions, in violation of Ind. Code § 23-2-2.7-2(5).

WHEREFORE, Mohr Truck respectfully requests that the Court enter judgment in favor of Mohr Truck on Count I, grant it relief including compensatory damages, punitive damages, attorneys' fees and costs, and requests all other just and proper relief.

## JURY DEMAND

Mohr Truck demands trial by jury on all claims so triable.

Respectfully submitted,

*/s/ Robert D. MacGill*_____
Robert D. MacGill (#9989-49)
Mark J. Crandley (#22321-53)
Jessica M. Lindemann (#31058-49)
Justin D. Rumer (#31494-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
E-mail: rmacgill@btlaw.com
 mcrandley@btlaw.com
 jessica.lindemann@btlaw.com
 justin.rumer@btlaw.com

*Attorneys for Andy Mohr Truck Center, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been filed electronically this 2nd day of October, 2014. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

David R. Jarrett
Billy M. Donley
BAKER & HOSTETLER LLP
1000 Louisiana, Suite 2000
Houston, Texas 77002
bdonley@bakerlaw.com
djarrett@bakerlaw.com

James W. Riley (# 6073-49)
Stephanie S. Chaudhary (# 28785-53)
RILEY BENNETT & EGLOFF, LLP
141 East Washington Street
Fourth Floor
Indianapolis, Indiana 46204
jriley@rbelaw.com

/s/ *Robert D. MacGill*

INDS02 1340704v1