UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDY MOHR TRUCK CENTER, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Cause No. 1:12-cv-448-WTL-DKL |
| VOLVO TRUCKS NORTH AMERICA, a division of VOLVO GROUP NORTH AMERICA LLC, | ) ) ) |
| | ) |
| Defendant. | ) |

## ENTRY ON VARIOUS PRETRIAL MOTIONS

Before the Court are three motions: Andy Mohr Truck Center, Inc.'s Motion in Limine (Dkt. No. 209) and Motion to Strike Second Rebuttal Report of Herbert Walter (Dkt. No. 256) and Volvo Trucks North America's Motion to Strike/Exclude Expert Testimony of Gary Kleinrichert (Dkt. No. 278). The motions are fully briefed, and the Court, being duly advised, resolves them as set forth below.[1]

### I. Andy Mohr Truck Center, Inc.'s Motion in Limine

On April 22, 2014, Andy Mohr Truck Center, Inc., ("Mohr Truck") filed a motion in limine asking this Court to enter an order precluding Volvo Trucks North America ("Volvo") from introducing "any evidence or testimony regarding how Volvo's profitability as reported on the monthly 'gross profit model analysis' affected the level of price concession," and "any

---

[1] All of the motions currently before the Court pertain to Mohr Truck's now-dismissed failure to support claim. *See* Dkt. No. 303 at 18. At this point in the case, only Mohr Truck's claim for price discrimination remains; however, the Court understands that part of the "support" Volvo allegedly failed to provide Mohr Truck involved pricing. Therefore, the Court assumes the motions are still relevant to the sole remaining claim; the parties have not otherwise indicated.

evidence or testimony regarding competitive factors or specifications not offered by its Rule 30(b)(6) designee and not contained in the Retail Sales Allowance ("RSA") (price concession) spreadsheet or any other documents produced in this litigation." Dkt. No. 209 at 1. A brief procedural history relevant to this motion follows.

After discovery was reopened on Mohr Truck's failure to support claim, Mohr Truck took certain depositions of Volvo representatives pursuant to Federal Rule of Civil Procedure 30(b)(6). Mohr Truck claims now—and claimed the same to the Magistrate Judge, *see* Dkt. No. 204—that Volvo's designees were unable to provide specific reasons why Mohr Truck received less favorable price concessions; rather, Mohr Truck claims their answers are "vague generalities."[2] Further, during two of the depositions, Volvo representatives referred to a monthly financial report in explaining that Volvo took its financial position into consideration when making the decision whether to give certain price concessions. Mohr Truck requested that these monthly reports be produced, but this request was refused by Volvo and the Magistrate Judge declined to order production. *See id.* It is this background that prompted the present motion in limine to prevent Volvo from relying on anything but their "vague generalities" and to prevent any testimony about the monthly financial reports.

Seventh Circuit precedent necessitates that this Court **DENY** Mohr Truck's motion. In *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630 (7th Cir. 2001), the Seventh Circuit noted the following:

> One sentence of [] Rule [30(b)(6)] provides, "The persons so designated shall testify as to matters known or reasonably available to the organization." In [] light

---

[2] The Magistrate Judge noted that she was not provided the transcripts of the Rule 30(b)(6) depositions to determine if Volvo's designees' responses were sufficient. She urged Mohr Truck to file a motion to compel on the issue if Mohr Truck believed Volvo did not provide witnesses prepared to testify on price concessions. *See* Dkt. No. 204 at 4-5. Mohr Truck did not do so.

of that sentence, McPherson apparently construes the Rule as absolutely binding a corporate party to its designee's recollection unless the corporation shows that contrary information was not known to it or was inaccessible. *Nothing in the advisory committee notes indicates that the Rule goes so far.* McPherson cites *Rainey v. American Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 94 (D.D.C. 1998), in support, but two other district courts have reached different conclusions *and we think theirs is the sounder view*. See *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000) ("testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes"); *United States v. Taylor*, 166 F.R.D. 356, 362 n. 6 (M.D.N.C. 1996) (testimony of Rule 30(b)(6) designee does not bind corporation in sense of judicial admission).

*Id*. at 637 (emphasis added). Thus, Volvo is not "bound" by the testimony it provided via its Rule 30(b)(6) designees, and this Court cannot preclude Volvo from offering testimony different from what its Rule 30(b)(6) designees gave during the depositions. That said, Mohr Truck is free to use Volvo's designees' deposition testimony—like any testimony given during a deposition—for impeachment purposes at trial.

With regard to the monthly financial reports, Volvo noted during the Rule 30(b)(6) depositions that it generally took its financial situation into consideration in determining what level of price concessions it gave to certain dealers. It is certainly free to testify as such at trial; as the Magistrate Judge noted, "Volvo's overall financial position likely is a factor in many decisions made by the company." Dkt. No. 204 at 5. The Court has no reason to believe that Volvo intends to offer specific information about the monthly reports it refused to produce in discovery; if it does attempt to offer such evidence at trial, Mohr Truck should make the appropriate objection at that time.

## II. <u>Andy Mohr Truck Center, Inc.'s Motion to Strike Second Rebuttal Report of Herbert Walter</u>

On July 3, 2014, Mohr Truck filed a motion to strike certain paragraphs, attachments, and appendices of the rebuttal report of Volvo's expert, Herbert E. Walter. For the reasons that follow, this motion is **DENIED**.

On April 25, 2014, the Magistrate Judge established new deadlines for the filing of expert reports after Mohr Truck's failure to support claim was reinstated by the Court. *See* Dkt. No. 218. Specifically, by May 8, 2014, Mohr Truck was to file its expert report, and by June 19, 2014, Volvo was to file its "rebuttal" expert report.

On May 8, 2014, Mohr Truck's expert, Gary Kleinrichert, issued a report "ascertaining the damages Mohr Truck incurred as a result of Volvo Trucks' alleged failure to support Mohr Truck's efforts." Dkt. No. 281-1 ¶ 4. During Kleinrichert's deposition, he noted that his damages report assumed that Volvo failed to support Mohr Truck but that he had no opinion on the matter. *See* Dkt. No. 257-2, Kleinrichert Dep., at 21 ("I have assumed that they have not supported Mohr Truck Center as they've alleged. I don't have an opinion on whether they have or have not supported Mohr Truck Center.").

Subsequently, on June 19, 2014, Volvo's expert, Herbert E. Walter, issued a report assessing the level of support provided by Volvo Trucks to Andy Mohr Truck Center and reviewing and commenting on Kleinrichert's report. At his deposition, Walter admitted that his opinions regarding the level of support provided by Volvo was not "a rebuttal report." Dkt. No. 298-1, Walter Dep., at 118. Thus, Mohr Truck seeks to strike Walter's opinions on the level of support provided by Volvo because "such opinions are well beyond the scope of a proper rebuttal report[.]" Dkt. No. 257 at 1; *see* Federal Rule of Civil Procedure 26(a)(2)(D)(ii) (providing that a rebuttal expert is allowed "solely to contradict or rebut evidence on the same subject matter identified by another party").

In response, Volvo essentially makes two arguments. The first is that Walter's expert report is proper because it rebuts the "underlying assumption" that Volvo failed to support Mohr Truck. *See* Dkt. No. 284 at 6 ("Walter's price concession analysis properly rebuts not only

4

Kleinrichert's principal assumption but also the foundational basis of his entire damage model, namely that the 'damages' Kleinrichert calculated are, in Defendants words, 'flowing from Volvo's failure to support Mohr Truck.'"). The Court finds this argument—and the district court cases Volvo cites in support—to be unpersuasive. The first part of Walter's report questions a key element of Mohr Truck's case—whether or not it suffered losses. Thus, it does not challenge an "underlying assumption" on which the damage calculation was based; it challenges whether Volvo is even liable for the alleged damages. The Court agrees with Mohr Truck that this is not proper rebuttal.

However, Volvo's second argument—essentially, that because of the way the expert reporting was ordered to be disclosed, Walter's timely report should not be stricken—holds more weight. As noted above, the Magistrate Judge only set a date for Mohr Truck to file an expert report and then set a date only for Volvo to file a "rebuttal" report. Thus, Volvo never had a date set by which it had to file *its own* expert report. While Mohr Truck argues that Volvo intentionally failed to inform the Magistrate Judge that it wanted to file an expert report—so it could later "sandbag" Mohr Truck—there is nothing to support that in the record other than Mohr Truck's speculation. It seems that Volvo essentially thought it could file an expert report on all "support issues" by the date set by the Magistrate Judge for its "rebuttal" report, and the Court finds that in light of the convoluted procedural history of the case, this was reasonable. That said, the Court will not treat the liability portion of Walter's report as "rebuttal"; clearly it is not. Mohr Truck should thus have an opportunity to rebut that portion of Walter's report that opines on liability.

Accordingly, Mohr Truck's Motion to Strike Second Rebuttal Report of Herbert Walter (Dkt. No. 256) is **DENIED**. Mohr Truck will have **twenty-eight days from the date of this**

5

**Entry** to submit a rebuttal expert report, if it desires, to Walter's report on liability. The Court also notes that Mohr Truck indicated it anticipates filing a motion to exclude the liability portion of Walter's report, *see* Dkt. No. 257 at 1; any such motions are due **within ten days of the date of this Entry** as indicated in Dkt. Nos. 277 and 294.

### III. <u>Volvo Trucks North America's Motion to Strike/Exclude Expert Testimony of Gary Kleinrichert</u>

On July 3, 2014, Volvo filed a Motion to Strike/Exclude the Expert Testimony of Mohr Truck's expert, Gary Kleinrichert. As noted above, Kleinrichert issued an expert report that opined as to Mohr Truck's damages as a result of Volvo's alleged failure to support. Volvo argues that Kleinrichert's report is unreliable, premised on irrelevant data and speculative assumptions, and fails to account for several salient facts. For the reasons explained below, Volvo's motion is **DENIED**.

The Seventh Circuit has recently reaffirmed the standard that district courts must use to determine if expert testimony is admissible at trial:

> Expert testimony is admissible at trial if the testimony is relevant to a fact in issue, is based on sufficient facts or data, and is the product of reliable scientific or other expert methods that are properly applied. Fed. R. Evid. 702. The Supreme Court in *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)] interpreted Rule 702 to require that district courts, prior to admitting expert testimony, determine whether the testimony is reliable and whether it will assist the trier of fact in determining some fact that is at issue. That is, the district court serves as a "gatekeeper" whose role is to ensure that an expert's testimony is reliable and relevant.

*Stuhlmacher v. Home Depot U.S.A., Inc.*, -- F.3d --, 2014 WL 7174261, at *3 (7th Cir. Dec. 17, 2014) (internal citations omitted). In his report, Kleinrichert offers three different damage calculations: lost truck sales, lost parts and service sales, and expected profits from thirteen identified transactions. Volvo challenges all three calculations. With this in mind, the Court turns to Volvo's arguments.

### A. Lost Truck Sales

Kleinrichert's report describes the method he used to calculate Mohr Truck's lost truck sales as follows:

> To ascertain the damages sustained by Plaintiff as a result of Defendants' allegations, I have utilized a methodology consistent with the yardstick and market share approaches. The yardstick approach is based on identifying companies similar to the plaintiff's company to assess damages. The market share approach is based on comparing the expected market share of the plaintiff's company absent the alleged conduct to the company's actual market share to assess damages. In this case, I have identified similar markets to that of Mohr Truck and compared Volvo Trucks' market share in those markets to Volvo Truck's market share in the Indianapolis market to ascertain Mohr Truck's lost sales. This methodology is consistent with both a yardstick and market share approach.

Dkt. No. 281-1 ¶ 11. Volvo first takes issue with Kleinrichert's use of a "hybrid" yardstick and market share approach.

Volvo argues that instead of comparing Mohr Truck to another, comparable Volvo dealer, Kleinrichert compared the Indianapolis market, where Mohr Truck was located, to eight other Volvo markets: Chicago, Cincinnati, Cleveland, Columbus, Detroit, Lexington, Louisville, and St. Louis. Volvo also correctly argues that Kleinrichert does not compare Mohr Truck's market share "before and after the alleged wrongdoing." Dkt. No. 279 at 6.[3] As the Court understands it, there are various approaches to calculate damages, and other than note that Kleinrichert used a "hybrid" approach, it has not demonstrated that this method is unreliable. If Volvo believes a different methodology would have been a better choice for this case, it is certainly free to address that on cross-examination.

The Court now turns to Volvo's comparability arguments. As Volvo notes, "[a] yardstick approach is an acceptably reliable method under *Daubert* for calculating lost profits only if the

---

[3] Volvo allegedly began its discriminatory conduct immediately after Mohr Truck became a Volvo dealer, so there was no "before-and-after" data to use.

benchmarks (or yardsticks) are sufficiently comparable that they may be used as accurate predictors of what the target would have done." *CDW LLC v. NETech Corp.*, 906 F. Supp. 2d 815, 824 (S.D. Ind. 2012). "Absent the requisite showing of comparability, a damage model that predicts either the presence or absence of future profits is impermissibly speculative and conjectural." *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 812 (N.D. Ill. 2005). Volvo first argues that Kleinrichert "has not made the 'requisite showing' that the Class 8 heavy-duty truck markets he selected as yardsticks are comparable to the Indianapolis Class 8 heavy-duty truck market." Dkt. No. 279 at 10. The Court disagrees.

In his report, Kleinrichert notes that the eight chosen markets are "Midwest metropolitan areas[.]" Dkt. No. 281-1 ¶ 13. He expounded on this in his deposition:

> I was looking for Midwestern markets, which would be common to use markets that geographically are more close because they're considered more economically similar in that they're impacted by similar economic events. So I was looking for markets that were—had a proximity to Indianapolis and which were larger metropolitan markets[.]

Dkt. No. 279-2 at 89. The Court finds this explanation to be sufficient to make the requisite showing of comparability.

Volvo next argues that the "aggregate average Midwest market share" Kleinrichert calculated is not representative of any of the eight markets, let alone predictive of the Indianapolis market. In making this argument, Volvo raises legitimate concerns given the admitted variations in the Class 8 heavy truck industry; however, ultimately, the Court finds them to be best addressed on cross-examination. As one district court noted, "[t]here is a fine line between a court finding that proffered expert testimony is 'unpersuasive' (and capable of being submitted to a jury) and when a court concludes that evidence is wholly 'unreliable' (and properly excludable under *Daubert* )." *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d

8

870, 887 (E.D. Wis. 2010). In all, the Court does not find the methodology to be so unreliable that it should not be submitted to the jury.

Clearly, taking an average of the eight markets resulted in some markets being higher and lower than that average—this is the exact result expected when "taking an average." And, it is true that given the admitted variation in the Class 8 heavy truck industry, that the average suggested by Kleinrichert may not be predicative of what Mohr Truck would have actually obtained—it could be either too low or too high. But this is not the case where Kleinrichert has taken "an average of unknowns" resulting in "an unknown." Kleinrichert took eight comparable markets—all of which had various market shares—and averaged them to come to some prediction of what Mohr Truck's market share might have been in Indianapolis had Volvo not, allegedly, discriminated against it. Volvo may not believe it is the best method, but that does not mean it is unreliable.[4]

Finally, Volvo makes a few quibbles. It argues that Kleinrichert's report "ignores multiple obvious and known facts and circumstances that indicate that AMTC was, at least during the relevant time periods, a less than average operation in a more difficult than average situation." Dkt. No. 279 at 19. In other words, Volvo challenges Kleinrichert's assumption that Volvo's alleged failure to support was the sole factor that prevented Mohr Truck from selling Volvo Trucks. The Court agrees with Mohr Truck that these arguments are best left for cross-examination as they go to the weight of Kleinrichert's report, not its admissibility. *See, e.g.*, *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) ("The soundness of the factual

---

[4] The Court agrees with Mohr Truck that Volvo's own goal for Mohr Truck to obtain 20% market share in Indianapolis was a suitable "check" on Kleinrichert's results.

9

underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact.").

Volvo also challenges Kleinrichert's use of "IHS registration data to calculate Volvo Trucks' market share in the allegedly comparable markets." Dkt. No. 279 at 20. Volvo notes that the IHS data reflects the number of trucks *registered* in any given market, as opposed to the number of trucks *sold* in any given market. This is an important distinction, Volvo argues, because a truck buyer can register the truck in a different market from where it was purchased. Based on this, Volvo argues that "Kleinrichert chose to simply equate new truck registrations in each of his allegedly comparable markets with new truck sales without making adjustments for new trucks registered within a given market but purchased outside that market." *Id*. In response, Mohr Truck notes that it had to use the IHS data because Volvo did not produce the actual number of truck sales in the requested markets. Regardless, the Court agrees with Mohr Truck that whether Kleinrichert should have used a different data set—despite the fact that he was without access to it—is an issue for cross-examination. *See Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 809 (7th Cir. 2013) ("Whether [the expert] selected the best data set to use, however, is a question for the jury, not the judge. Assuming a rational connection between the data and the opinion—as there was here—an expert's reliance on faulty information is a matter to be explored on cross-examination; it does not go to admissibility.").

### B. Lost Parts and Service Sales

The next calculation offered in Kleinrichert's report is for Mohr Truck's lost parts and service sales:

> To calculate Plaintiff's lost profits from parts and service sales, I have allocated the annual repair and maintenance costs for Mohr Truck's customers among the following four categories of costs: parts used by Mohr Truck to service customers'

10

vehicles, labor for Mohr Truck service personnel, parts used by other service teams, and labor for other service teams.

Dkt. No. 81-1 ¶ 21. Kleinrichert used data from the American Transportation Research Institute ("ATRI") to obtain a dollar amount per mile for repair and maintenance cost for a truck. Volvo takes issue with Kleinrichert's use of the ATRI data:

> Because ATRI's average per mile cost figure is comprised—to an unknown degree—on expenses related not only to trailer maintenance and repair but also to trucks of various vehicle ages, configurations and installed technologies, it is not a reliable estimate of the per mile repair and maintenance cost of a Volvo truck.

Dkt. No. 279 at 23-24. The Court agrees with Mohr Truck, however, that whether the ATRI data, with or without certain adjustments, was the best data to use is an issue for cross-examination. *See* Dkt. No. 297 at 18 (Volvo insinuating that ATRI is not the only source of data available).

Volvo next argues that Kleinrichert's lost parts and services calculations are flawed because he fails to account for the fact that Mohr Truck's Ford operations "dominated" the parts and services department. Mohr Truck notes that Kleinrichert did request "a breakout of Volvo-specific parts and services revenue, but Mohr Truck could not provide it" because its accounting system is not set up in such a fashion. Dkt. No. 290 at 27. Moreover, Mohr Truck correctly notes that Kleinrichert used Mohr Truck's parts and services data to come up with "a ratio, not a sales figure" and there is "no reason to think the ratio would vary significantly by manufacturer." *Id*. at 28. The Court finds nothing unreliable in the chosen calculations.

Volvo's next two arguments are best left to cross-examination: that Kleinrichert erred in assuming that all parts needed to repair a Volvo truck purchased from Mohr Truck would be bought from Mohr Truck; and that Kleinrichert ignored the fact that Mohr Truck had the lowest customer service rating of any Volvo repair and maintenance service provider. *See Smith*, 215

11

F.3d at 718 ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact.").

### C. Identified Transactions

The last calculation of damages contained in Kleinrichert's report is the amount Mohr Truck lost by being unable to complete thirteen identified transactions:

> Although I have prepared a conservative analysis of the damages sustained by Mohr Truck as a result of Volvo's alleged failure to support Mohr Truck's efforts, I understand Plaintiff has identified specific examples of potential sales [it] contends it was unable to make as a result of that lack of support. I have been asked to calculate Mohr Truck's expected profit for each of these potential sales, should the Court finds the loss of these sales was caused by Volvo's alleged lack of support.

Dkt. No. 281-1 ¶ 31. Volvo argues that the operators of these transactions are large commercial operators that likely perform some of their repair and maintenance in-house. Thus, Kleinrichert should have adjusted the repair costs accordingly. Volvo also argues that Kleinrichert should have determined whether the operators were "for-hire" or "private" carriers, as the ATRI data only applies to for-hire carriers.

These arguments are rather perfunctory and undeveloped; Volvo does not address either in its Reply. Nevertheless, any such challenges to this portion of Kleinrichert's report can be addressed during cross-examination.

### IV. CONCLUSION

For the reasons explained above, Mohr Truck's Motion in Limine (Dkt. No. 209), Mohr Truck's Motion to Strike Second Rebuttal Report of Herbert Walter (Dkt. No. 256), and Volvo's Motion to Strike/Exclude Expert Testimony of Gary Kleinrichert (Dkt. No. 278) are all **DENIED**.

SO ORDERED: 2/02/15

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification