UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDY MOHR TRUCK CENTER, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Cause No. 1:12-cv-448-WTL-DKL |
| VOLVO TRUCKS NORTH AMERICA, a division of VOLVO GROUP NORTH AMERICA LLC, | ) ) ) |
| | ) |
| Defendant. | ) |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is the Defendant's motion for summary judgment (Dkt. No. 313). The motion is fully briefed and the Court, being duly advised, **DENIES** the motion for the following reasons.

### I. STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party

bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

The facts that follow are those taken in the light most favorable to the Plaintiff, Andy Mohr Truck Center ("Mohr Truck"). Many of these facts are disputed by Defendant Volvo Trucks North America ("Volvo").

This case arises out of a business relationship turned sour after Volvo appointed Mohr Truck as a new Volvo Trucks dealer. In early 2010, Volvo's then-current central Indiana Volvo Trucks and Mack Trucks dealer announced that he was resigning as a Volvo Trucks franchisee. Seeing an opportunity to enter into the Class 8 heavy-duty truck market, Andy Mohr decided to pursue the possibility of acquiring the Volvo Trucks franchise for Indianapolis, Indiana. Specifically, Mohr was interested in combining a Volvo Trucks franchise with a Mack Trucks franchise.

On March 10, 2010, therefore, Mohr submitted his Volvo Dealer Application. Subsequently, Mohr traveled to Greensboro, North Carolina to meet with various Volvo and Mack Trucks executives. During these meetings, Volvo executives represented that they would grant Mohr a Mack Trucks franchise in a separate transaction if Mohr first entered into a separate agreement to become a Volvo Trucks dealer ("the Mack Trucks Misrepresentation"). Keen on this idea, Mohr signed the Volvo Dealer Sales and Service Agreement ("the Dealer Agreement") on March 30, 2010, and opened for business as a Volvo Trucks dealer on April 20, 2010.

Unfortunately, after April 20, 2010, things turned south between Volvo and Mohr. It became clear sometime after July 2010 that Mohr would not be awarded a Mack Trucks

2

franchise. Mohr was told that if he wanted the Mack Trucks franchise he would have to buy it; ultimately, however, the Mack Trucks franchise was sold to someone else. Mohr informed Volvo that because of this, Volvo was in breach of their agreements and, in retaliation, Volvo began to discriminate against Mohr Truck, costing it several would-be profitable deals.

To understand how Volvo discriminated against Mohr Truck, a bit of background is needed. Class 8 heavy-duty trucks are sold in a competitive market; generally, customers solicit bids from multiple dealers before purchasing them. As a result, Volvo dealers often ask Volvo to give them price concessions (a discount on the wholesale price), warranty concessions (a discount on the price of an extended warranty), or trade-in overallowances (a price for a trade-in that is over the amount of what the trade-in is really worth). In order to determine what concessions to give, Volvo refers to its Retail Sales Assistance ("RSA") policy. As every would-be transaction is unique, Volvo evaluates RSA requests on a case-by-case basis; however, Volvo equalizes concessions when two Volvo dealer are bidding on the same transaction—the same customer, date, and specifications. Ultimately, the "competitive circumstances" surrounding the transaction drive the RSA process; however common factors Volvo considers are: 1) the truck price offered by its competitors; 2) the customer's purchase history; 3) the quantity of trucks in the transaction; 4) the truck specifications; and 5) Volvo's factory production capacity.

Between 2010 and 2012, Mohr Truck requested certain concession percentages—for price, warranties, and trade-ins—from Volvo for various potential transactions. Volvo repeatedly offered other Volvo franchisees better concessions than it offered Mohr Truck; as a result of this discriminatory conduct, Mohr Truck lost at least thirteen deals.

Volvo sued Mohr Truck and Mohr on May 22, 2012; Mohr Truck sued Volvo on June 22, 2012. The cases were consolidated into the present action. Most claims have been resolved by

motions to dismiss, motions for judgment on the pleadings, and motions for summary judgment. The sole remaining claim left in this case is Mohr Truck's claim for price discrimination under the Indiana Unfair Practices Act ("IUPA") and Indiana Deceptive Franchise Practices Act ("IDFPA").

### III. DISCUSSION

Volvo seeks summary judgment on Mohr Truck's claim brought pursuant to the IUPA/IDFPA for price discrimination. *See* Ind. Code § 23-2-2.7-2(5) ("It is unlawful for any franchisor . . . to . . . [d]iscriminat[e] unfairly among its franchisees[.]"). Volvo makes two arguments in support of its summary judgment motion. First, it argues that the limitation of remedies provision in Mohr Truck's Dealer Agreement precludes Mohr Truck's recovery. Second, it argues that Mohr Truck has not met its prima facie case of discrimination under the IUPA/IDFPA. The Court addresses both arguments below.

#### A. Limitation of Remedies

Volvo first argues that the limitation of remedies clause found in the Dealer Agreement precludes Mohr Truck's recovery. The limitation of remedies clause reads as follows:

> A limitation of remedies and damages will apply to any action, suit, other proceeding, or dispute between the Company and the Dealer arising out of or relating to:
> - the performance of this Agreement
> - the manufacturer-dealer relationship
> - any warranty the Company or the Dealer gives to a Product purchaser or lessee.

The limitation is as follows:

***NEITHER THE COMPANY NOR THE DEALER MAY RECOVER CONSEQUENTIAL DAMAGES, INCIDENTAL DAMAGES, OR OTHER INDIRECT OR SPECIAL DAMAGES OR LOSSES SUCH AS, BUT NOT LIMITED TO, LOSS OF:***
- ***PROFITS***
- ***GOODWILL***

4

- *BUSINESS OPPORTUNITY*
- *USE OF PLANT OR EQUIPMENT*
- *EXECUTIVE OR EMPLOYEE TIME*

Dkt. No. 16-2 at 39 (so in original). Volvo argues that Mohr Truck "seeks to recover the profits it claims it would have earned had it not received discriminatory price concessions from Volvo," Volvo's Reply at 8, and that the limitation of remedies clause bars this type of damages.

The limitation of remedies provision has had a tormented procedural history in this case. Early in 2013, Volvo filed a motion for judgment on the pleadings on Mohr Truck's complaint. The Court granted the motion with respect to Count IV, Mohr Truck's breach of written contract claim. *See* Dkt. No. 112. In dismissing the breach of contract claim, the Court found that the limitation of remedies clause in the Dealer Agreement barred Mohr Truck's recovery: "the value of a franchise is measured in terms of profit, goodwill, and business opportunity. Recovery for the impaired value of the franchise is thus recovery for the loss of profit, goodwill, and business opportunity, all of which are barred by the limitation of remedies provision." *Id*. at 11. In a footnote, the Court noted that Mohr Truck "does not argue that the provision is unenforceable." *Id*. at 11, n.7.

Mohr Truck then filed a motion to reconsider that ruling arguing, predictably, that the limitation of remedies clause was unenforceable under the IDFPA, which provides, in relevant part the following:

> It is unlawful for any franchise agreement entered into between any franchisor and a franchisee who is either a resident of Indiana or a nonresident who will be operating a franchise in Indiana to contain any of the following provisions . . . *Limiting litigation brought for breach of the agreement in any manner whatsoever.*

Ind. Code § 23-2-2.7-1(10) (emphasis added). The Court agreed with Mohr Truck and granted its motion on October 17, 2013, reinstating Count IV—although it noted that Mohr Truck should have raised the argument earlier. *See* Dkt. No. 157.

5

Approximately eight months later, Volvo filed a motion to reconsider the Court's decision to reinstate Mohr Truck's breach of contract claim. Volvo argued, in part, that Mohr Truck was barred from using the IDFPA as a defense to render the limitation of remedies clause unenforceable because it was barred by the two-year statute of limitations. *See* Ind. Code § 23-2-2.7-7 ("No action may be brought for a violation of this chapter more than two (2) years after the violation."). The Court agreed, noting that because more than two years had passed since the Dealer Agreement was signed, Mohr Truck could not use the IDFPA as a shield in defense of its breach of contract claim. *See* Dkt. No. 303 at 17-18 ("[T]he Court agrees with Volvo that Mohr Truck is precluded from asserting that the limitation of remedies provision in the Dealer Agreement violates the IDFPA because the two-year statute of limitations has ran on that defense."). The Court noted, however, that Volvo was unjustifiably late in raising this issue, as it could have been raised in Volvo's opposition to Mohr Truck's motion to reconsider or in its summary judgment motion.

Now, in its second summary judgment motion, Volvo argues that "the doctrine of law of the case" applies, barring Mohr Truck's attempt to recover lost profits because the Court previously enforced the limitation of remedies clause. Volvo did not raise this argument in its brief in support of its motion for summary judgment; rather, it perfunctorily asserts this argument in its Reply.[1] Not surprisingly, Mohr Truck objected and moved to strike this new argument; the

---

[1] Volvo's use of the doctrine of law of the case to explain away, once again, its belatedness in raising an argument is unconvincing. If Volvo felt that the limitation of remedies clause—and the applicable two-year statute of limitations—acted as a bar to Mohr Truck's price discrimination claim, it should have included it as an affirmative defense in its answer and raised it in its opening brief on summary judgment. The fact that the doctrine of law of the case operates as a "presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit," *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995), does not excuse a party from raising the issue, especially when, as here, the relief requested is dispositive.

Court instead allowed Mohr Truck to file a surreply to address the limitation of remedies issue rather than strike the new argument.

Mohr Truck argues that the Court's prior ruling enforcing the limitation of remedies clause—because the two-year statute of limitations applied—should not apply to its claim for price discrimination. In this regard it argues that: 1) the limitation of remedies clause does not apply to a claim for discrimination under the IDFPA; and 2) public policy dictates that the limitation of remedies clause not be enforced in this situation. Ultimately, the Court agrees that the limitation of remedies clause is inapplicable to Mohr Truck's price discrimination claim.

In *State Grp. Indus. (USA) Ltd. v. Murphy & Associates Indus. Servs., Inc.*, the Indiana Court of Appeals was faced with a similar situation as the case at bar. 878 N.E.2d 475, 476 (Ind. Ct. App. 2007). In *State Group*, the trial court found that the defendant had breached its contract with the plaintiff and knowingly made false and/or misleading statements and representations to the plaintiff. *Id*. at 478. While the trial court awarded actual damages for the breach, it refused to award damages under the Indiana Crime Victims Statute because of a limitation of remedies clause in the contract. *Id*.

On appeal, the court of appeals noted that limiting damages for an intentional, tortious act likely violated public policy. *Id*. at 479 (citing cases noting that public policy prevents a party from limiting damages for "willful and wanton misconduct"). Moreover, the court noted that Indiana courts "have declined to release parties from liability based on exculpatory provisions phrased in general terms." *Id*. at 480. Because the limitation of remedies clause "lack[ed] the requisite specificity"—assuming it did not violate public policy—the court held that it "did not protect [the defendant] from liability under the Crime Victims Statute stemming from [the defendant's] intentional misrepresentations." *Id*. at 481.

7

The Court believes the same rationale applies here. First, Mohr Truck has alleged that Volvo intentionally discriminated against it in retaliation for Mohr's assertion of his contractual rights; this is the type of willful and wanton conduct for which public policy dictates a party cannot limit its damages. Moreover, as Mohr Truck notes, its discrimination claim "arises by operation of Indiana statute and the Dealer Agreement does not express a clear intent to override Mohr Truck's statutory rights." Mohr Truck's Surreply at 3. Volvo makes no argument why the limitation of remedies clause should apply other than the fact that the Court found it enforceable in a different context. In all, the Court does not read the limitation of remedies clause—regardless of its enforceability—to apply to causes of action brought for discrimination pursuant to the IDFPA.[2] It thus turns to Volvo's other arguments in support of its motion for summary judgment.

## B. Prima Facie Case

Volvo argues that Mohr Truck cannot meet its prima facie case of discrimination. "Discrimination among franchisees means that as between two or more similarly situated franchisees, and under similar financial and marketing conditions, a franchisor engaged in less favorable treatment toward the discriminatee than toward other franchisees." *Canada Dry Corp. v. Nehi Beverage Co. of Indianapolis*, 723 F.2d 512, 521 (7th Cir. 1983). "Thus, proof of 'discrimination' requires a showing of arbitrary disparate treatment among similarly situated individuals or entities." *Id*. With this in mind, the Court turns to the parties' arguments.

---

[2] Accordingly, Volvo's motion for leave to file an amended answer (Dkt. No. 352) is **DENIED AS MOOT**. Volvo simply sought leave to "add an additional affirmative defense that Plaintiff's sole claim is barred by the Limitations of Remedies provision of the parties' Dealership Agreement." Dkt. No. 352 ¶ 4.

*1. Similarly Situated*

Volvo argues that Mohr Truck has failed to show that other franchisees were similarly situated to it. "Whether a plaintiff/franchisee is 'similarly situated' to other franchisees will, of course, depend on which factors about the franchisees are compared." *Implement Serv., Inc. v. Tecumseh Products Co.*, 726 F. Supp. 1171, 1181 (S.D. Ind. 1989). "The factors compared should be those factors that are relevant to the underlying business decision being made." *Id*. Mohr Truck argues that the transactions it has identified are comparable because: 1) they involve other franchisees operating under the same form dealer agreement; 2) they occurred under the same financial conditions (in that Volvo would have to build the trucks rather than sell from the dealer's inventory); 3) they involve the same truck model; 4) they involve the same type of customer (large, fleet purchasers); and 5) the Volvo franchisees all operate under the same national sales and marketing policies.

Volvo disagrees. It notes that these factors identified by Mohr Truck are "irrelevant" in determining whether other franchisees are similarly situated to Mohr Truck, and that Mohr Truck "offers *nothing* to show comparability between the competitive circumstances surrounding its RSA requests and the competitive circumstances surrounding the RSA requests of the allegedly 'favored' dealers." Volvo's Reply at 8. It repeats this argument throughout its briefs. *See, e.g.*, Volvo's Br. at 12 ("AMTC does not, however, offer *any details* to establish how any of the other dealers are comparable to AMTC or how the competitive circumstances surrounding any of the [] other quotations are comparable to the competitive circumstances surrounding AMTC's quotation[s]."); Volvo's Br. at 14 ("AMTC presents no evidence to show any similarity on the financial and marketing conditions (i.e., the competitive circumstances) underlying the subject quotations [] and those underlying the allegedly comparable quotations.").

Essentially, Volvo argues that the "competitive circumstances" surrounding each allegedly discriminatory transaction prove that Mohr Truck was not similarly situated to the other franchisees and justify its decision to award greater concessions to other franchisees. The Court agrees with Mohr Truck, however, that "[d]etermining the substantiality of these sorts of differences is exactly what juries are for." Mohr Truck's Resp. at 26. As Mohr Truck notes, "Volvo has done no more than declare that . . . other competitive factors may explain the disparate treatment." Mohr Truck's Resp. at 30.[3] A jury certainly could find that the "competitive circumstances" underlying the transactions render the other franchisees incomparable to Mohr Truck; however, a jury could also not believe Volvo's declarations. Whether Volvo's explanations for why Mohr Truck received less favorable concessions are the true reasons for the different concessions given hinge on credibility assessments and issues of fact that must be resolved by a jury. Accordingly, summary judgment will not be granted to Volvo on this basis.

## 2. Arbitrary Treatment

Volvo next argues that Mohr Truck "cannot establish a prima facie case of arbitrary disparate treatment." Volvo's Br. at 22.[4] It bases this on its argument that Mohr Truck

---

[3] For certain transactions, Volvo does attempt to explain why Mohr Truck—due to the "competitive circumstances"—was not similarly situated to other dealers who received more favorable concessions. For example, for one transaction, a dealer who had a "national account customer" received a better concession than Mohr Truck. Similarly, in another transaction, a dealer whose customer had a purchasing history with Volvo received a better concession than Mohr Truck. A jury could find that these circumstances justify the disparity in concessions and, therefore, that the allegedly-similar dealers are *not* similar. The Court, however, cannot say as a matter of law that Mohr Truck is not similarly situated to another dealer simply because its customer was not a "national account customer" or because its customer did not have "actual purchasing histories" with Volvo. These are determinations for a jury to make.

[4] Later in its brief, Volvo argues that even if Mohr Truck can meet its prima facie case, it has shown "that its decisions were the result of a legitimate, non-discriminatory appraisal of the competitive circumstances that surround all RSA quotations." Volvo's Br. at 30. While Volvo

10

"impermissibly 'cherry-picked' the data." *Id*. at 23. Mohr Truck evaluated the RSA concessions offered to other dealers on the same model of truck during the same time period—specifically, two weeks before through two weeks after the date it requested its concession. It then identified certain transactions where Volvo granted other dealers more favorable concessions than Mohr Truck. Volvo, however, argues that when one looks at *all* of the data—not just the few handpicked transactions suggested by Mohr Truck—Mohr Truck's concessions were equal to or higher (better) than 34.5 to 95.6 percent of all other concessions. Volvo thus concludes that "[t]he data shows that during AMTC's selected time periods it received considerably higher concession percentages than other Volvo dealers who quoted the same truck model to other customers." Volvo's Br. at 27.

In response, Mohr Truck argues that *Volvo* impermissibly "cherry picked the data to present Mohr Truck's claims in an unfavorable light" and "ignor[ed] the factors it claims are critical to its pricing decisions." Mohr Truck's Br. at 30. For example, Mohr Truck argues that by lumping in *all* of the transactions, Volvo compares a dealer whose customer was only interested in purchasing one truck with Mohr Truck's customers who, at times, were interested in purchasing up to 400 trucks. Mohr Truck argues that when one instead looks at those transactions that involve approximately the same number of trucks, Mohr Truck's concessions are consistently lower than other dealers.

To the extent that Volvo argues that Mohr Truck was not the franchisee that was treated the worst for the identified transactions, this argument is without merit. In all, the Court finds that Mohr Truck has presented sufficient evidence to create an issue of fact as to whether

---

attempts to frame this as an argument under *McDonnell Douglas*, it is really an argument that its decisions with regard to Mohr Truck were not arbitrary.

Volvo's decisions to award certain concessions to Mohr Truck were the result of arbitrary and disparate treatment.

*3. Damages*

Next, Volvo argues that Mohr Truck's price discrimination claim "is not supported by competent evidence of damages." Volvo's Br. at 27. It raises issues with the reliability of Mohr Truck's damages expert, Gary Kleinrichert, noting that Mr. Kleinrichert's expert report is the subject of a *Daubert* motion. Volvo's motion has since been denied, *see* Dkt. No. 319; thus, these arguments are without merit.

Volvo then argues that Mr. Kleinrichert did not make the *prima facie* showing necessary to support a price discrimination claim in his expert report. This argument is equally without merit. Mr. Kleinrichert was retained to serve as a damages expert; he did not offer an opinion on liability. He, like many damages experts, assumed liability. *See, e.g.*, Kleinrichert's Report at 2 ("Due to Volvo Trucks' alleged failure to support Mohr Truck's efforts, Mohr Truck suffered the loss of expected profits . . .").

Finally, Volvo notes that some allegedly-discriminatory transactions are not found in Mr. Kleinrichert's report. Specifically, Volvo identifies nine transactions in which Mohr Truck alleges it was discriminated against that are not contained in Mr. Kleinrichert's expert report. *See* Volvo's Br. at 29-30. Volvo is correct that only thirteen identified transactions are in Mr. Kleinrichert's report. However, Mohr Truck is not required to prove its damages via an expert. Indeed, Mohr Truck argues that "Andy Mohr and Gary Vaughn will also be able to testify regarding damages based on their personal knowledge of Mohr Truck's business." Mohr Truck Resp. at 32. Volvo is not entitled to summary judgment simply because Mr. Kleinrichert did not opine as to damages for each of the allegedly-discriminatory transactions.

*4. Causation*

In its Reply, Volvo raises a new argument. It argues that "[t]here is no substantive evidence that the allegedly deficient price concessions AMTC received were the actual and legal cause of AMTC losing any sales." Volvo's Reply at 16. Essentially, Volvo argues that Mohr Truck "can only speculate about" whether it would have completed the sale. Mohr Truck disagrees, arguing that Gary Vaughn, Mohr Truck's general manager and salesman has testified as such during his deposition and submitted affidavits asserting the same, and that this is sufficient evidence to withstand summary judgment. The Court agrees.

Mr. Vaughn claims that Volvo's discriminatory pricing caused Mohr Truck to lose several would-be profitable deals. He roots this in his working relationships and sales history with the potential customers as well as his decades of experience in the trucking industry selling Class 8 heavy trucks. While Volvo is free to challenge Mr. Vaughn on cross-examination, it is not entitled to summary judgment because it disagrees with Mr. Vaughn's conclusions.

## IV. CONCLUSION

For the foregoing reasons, Volvo's motion for summary judgment (Dkt. No. 313) is **DENIED**. Volvo's motion for leave to file an amended answer (Dkt. No. 352) is **DENIED AS MOOT**. This cause remains set for trial to begin on **Monday, August 10, 2015**. **The parties are reminded of their pretrial preparation deadlines contained in Docket No. 56.**

SO ORDERED: 5/6/15

*/s/ William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification