UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDY MOHR TRUCK CENTER, INC., ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | Cause No. 1:12-cv-448-WTL-DKL |
| VOLVO TRUCKS NORTH AMERICA, a ) | |
| division of VOLVO GROUP NORTH ) | |
| AMERICA LLC, ) | |
| ) | |
| **Defendant.** ) | |

### ENTRY ON DEFENDANT'S REMAINING MOTIONS IN LIMINE

The Court previously ruled on the majority of Volvo's motions in limine. *See* Dkt. No. 412. Three, however, remain outstanding. After hearing from the parties at the final pretrial conference and receiving additional briefing on certain issues, the Court resolves the remaining motions in limine as follows.

**Motion in Limine No. 1: Any evidence regarding any concessions (e.g., price concessions, purchased coverage concessions, parts concessions, trade-in allowances, over-allowances or any other discount) offered by Volvo to any dealer located outside the State of Indiana**

Part of AMTC's burden in this case is to show that it was treated less favorably than other similarly-situated franchisees. *See Canada Dry Corp. v. Nehi Beverage Co. of Indianapolis*, 723 F.2d 512, 521 (7th Cir. 1983) ("Discrimination among franchisees means that as between two or more similarly situated franchisees, and under similar financial and marketing conditions, a franchisor engaged in less favorable treatment toward the discriminatee than toward other franchisees."). Volvo moves in limine to prevent AMTC from comparing itself to any Volvo franchisee located outside of the State of Indiana. In this vein, it argues that the Indiana Deceptive Franchise Practices Act ("IDFPA") is "properly construed as a statute of exclusive

domestic application" and that the dormant commerce clause mandates that this Court interpret the IDFPA as a statute of exclusive domestic applicability, lest it "impose[] an unconstitutional burden on interstate commerce[.]" Dkt. No. 381 at 4.[1]

To begin, Volvo's argument that the IDFPA is "properly construed" as only applying to discrimination among Indiana franchisees is unpersuasive. The plain language of the statute contains no such geographic limitation. *See* Ind. Code § 23-2-2.7-2(5) ("It is unlawful for any franchisor who has entered into any franchise agreement with a franchisee who is either a resident of Indiana or a nonresident operating a franchise in Indiana to . . . Discriminat[e] unfairly among its franchisees[.]"). Moreover, "franchisee" is defined as "a person to whom a franchise is granted." Ind. Code § 23-2-2.5-1. Again, no geographic limitation is found in the plain language of this definition.

With regard to Volvo's argument based on the dormant commerce clause, AMTC argues that Volvo has waived this argument by waiting until the eve of trial to raise it. The Court agrees.[2] It is unclear to the Court why such an argument was made five weeks before the trial in this cause; it could have—and should have—been raised earlier. Volvo failed to raise this argument in any number of motions, including its third motion for summary judgment in which it specifically addressed the identified transactions at issue. *See* Dkt. No. 403 at 4 (AMTC correctly

---

[1] The fact that other states have encompassed the concept of "domestic application only" in their respective franchisee discrimination statutes is irrelevant. *See* Dkt. No. 373 at 7-9 (noting that, for example, Virginia, Utah, and Nebraska's statutes contain such a limitation). Indeed, Volvo itself notes that these "other states specifically worded their statutes to be of exclusive domestic application" and that "the Indiana statute is not as explicitly worded as other state statutes[.]" *Id*. at 8.

[2] AMTC argues that because Volvo is challenging the constitutionality of the IDFPA it should have raised this as an affirmative defense in its answer. The Court does not necessarily agree that this as-applied challenge to the IDFPA needed to be pled as an affirmative defense under Federal Rule of Civil Procedure 8(c), but agrees that it certainly should have been raised at an earlier point in time.

noting that "[i]n its opening summary judgment brief, Volvo affirmatively addressed a number of the transactions involving out-of-state franchisees that [AMTC] had previously identified without raising an issue regarding constitutionality of the statute. . . . In reply, Volvo again failed to assert that the statute would be unconstitutional if applied to the transactions at issue") (internal citations omitted). Instead, Volvo has waited to assert such an argument until the eve of trial in the form of a motion in limine. Essentially, Volvo is improperly seeking judgment as a matter of law on certain transactions in the form of a motion in limine. Under these circumstances, the Court agrees with AMTC that Volvo has waived any argument that the IDFPA should be construed as a statute of exclusive domestic applicability since it failed to raise it in a timely and proper manner. *See King v. Kramer*, 763 F.3d 635, 641 (7th Cir. 2014) (noting that waiver "is often construed as 'an equitable principle used by courts to avoid harsh results when a party has conducted itself in such a way as to make those results unfair.'") (quoting *Shearson Hayden Stone, Inc. v. Leach*, 583 F.2d 367, 370 (7th Cir. 1978)). It goes without saying that AMTC would be prejudiced by this belated attempt to constrain its case in chief. At trial, AMTC will not be limited to comparing itself to only other Indiana Volvo franchisees.

**Motion in Limine No. 2: Any evidence regarding any concessions offered by Volvo to any person or entity that is not a Volvo franchisee regardless of whether such person or entity is within Indiana or not**

Volvo notes that evidence submitted by AMTC in its summary judgment brief suggests that at trial AMTC will compare itself to non-franchisees. Thus, Volvo moves in limine to prohibit AMTC from introducing any evidence of concessions Volvo offered to non-franchisees.

The IDFPA prohibits discrimination among franchisees. *See* Ind. Code § 23-2-2.7-2(5) ("It is unlawful for any franchisor . . . to . . . [d]iscriminat[e] unfairly *among its franchisees*[.]") (emphasis added). Thus, the Court agrees with Volvo that evidence that it offered a *non-*

3

*franchisee* a higher concession than it offered AMTC would be irrelevant to show that Volvo treated AMTC less favorable than other franchisees. It is part of AMTC's burden in this case to show that the allegedly similarly situated comparators are, in fact, franchisees.

AMTC, however, notes that this evidence may be relevant for a different purpose depending on the reasons Volvo asserts at trial for not giving AMTC a certain concession. The Court agrees. For example, to the extent Volvo argues that it did not have the financial ability to give AMTC a certain concession, AMTC argues that it could introduce evidence that Volvo gave a non-franchisee a higher concession percentage to show that Volvo did have the ability to offer a lower concession.

There has been much argument over certain transactions where the customer is known as a "National Account Customer." If AMTC intends to introduce these transactions into evidence to prove discrimination, it will have to prove that the National Account Customers either are franchisees themselves or purchased trucks from a franchisee; again, the IDFPA only prohibits discrimination *among franchisees*. That said, to the extent they are themselves franchisees or purchased trucks from a franchisee, the Court has already addressed the admissibility of this evidence:

> For certain transactions, Volvo does attempt to explain why Mohr Truck—due to the "competitive circumstances"—was not similarly situated to other dealers who received more favorable concessions. For example, for one transaction, a dealer who had a "national account customer" received a better concession than Mohr Truck. Similarly, in another transaction, a dealer whose customer had a purchasing history with Volvo received a better concession than Mohr Truck. A jury could find that these circumstances justify the disparity in concessions and, therefore, that the allegedly-similar dealers are *not* similar. The Court, however, cannot say as a matter of law that Mohr Truck is not similarly situated to another dealer simply because its customer was not a "national account customer" or because its customer

did not have "actual purchasing histories" with Volvo. These are determinations for a jury to make.[3]

Dkt. No. 365 at 10. The fact that AMTC has chosen to compare itself to a franchisee who sold trucks to a National Account Customer, as opposed to a different customer, is a distinction for Volvo to make to the jury.

**Motion in Limine No. 14: Any evidence of alleged loss absent proof that such loss was a direct result of Volvo's concession decision**

Volvo argues that in order for AMTC to recover lost profits, "AMTC must prove that sales were lost as a direct result of Volvo's concession decisions, not some other reason." Dkt. No. 381 at 17. In supplemental briefing provided to the Court, Volvo expounded on this argument. It correctly notes that AMTC will have to prove both injury and causation in order to recover damages at trial. With regard to injury, Volvo notes that AMTC has to prove that the customer it was dealing with in an allegedly-lost transaction was actually going to purchase the trucks from AMTC; Volvo argues that it will not be enough to simply show that AMTC was willing to sell the trucks at a certain price. The Court agrees. In order to recover damages, AMTC will have to show that it actually suffered an injury—it will have to show that it lost a would-be profitable transaction.

Volvo then notes that it anticipates AMTC will try to accomplish this through testimony from Gary Vaughn. To this, Volvo has two objections: 1) Vaughn's testimony that a customer told him it would purchase trucks at a certain price is inadmissible hearsay; and 2) Vaughn's testimony about the potential sale is pure speculation. Volvo is correct that Vaughn will not be able to testify, for example, that "Customer X told me that it would purchase X number of trucks

---

[3] To be clear, AMTC still has the burden of showing that the dealer whose customer was a National Account Customer was a franchisee. As has been repeatedly noted in this Entry, the IDFPA only prohibits discrimination *among franchisees*.

at X price." That is clearly an out-of-court statement offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: 1) the declarant does not make while testifying at the current trial or hearing; and 2) a party offers in evidence to prove the truth of the matter asserted in the statement."). That said, to the extent a customer's statement *caused* AMTC to request a certain price concession, Vaughn could testify as such; the customer's statement would not be used for the truth of the matter asserted, but rather, to show the effect the statement had on Vaughn.

Further, the Court has already addressed Volvo's speculation argument on summary judgment. The Court previously noted that Vaughn's testimony on these issues is rooted "in his working relationships and sales history with the potential customers as well as his decades of experience in the trucking industry selling Class 8 heavy trucks." Dkt. No. 365 at 13. Of course, Vaughn cannot know with 100% accuracy whether the potential transactions would have actually occurred had Volvo given the requested concessions to AMTC. Indeed, there is always an element of speculation in calculating lost profits. *See, e.g.*, *BCS Servs., Inc. v. BG Investments, Inc.*, 728 F.3d 633, 639-40 (7th Cir. 2013) ("So this is a case in which defendants' misconduct prevented the plaintiffs from calculating damages accurately—and in such cases damages can be estimated by methods that would be deemed impermissibly speculative in other contexts."). That said, Vaughn has provided a basis for his testimony and the Court does not find it to be so speculative as to preclude the jury from hearing it. Volvo is certainly free to rigorously cross-examine Vaughn on these issues.

Turning now to the present motion in limine, it appears to the Court that the parties do not really disagree on the standard of causation. AMTC suggests that "responsible cause" is the appropriate standard, and suggests the following instruction: "A person's conduct is legally

responsible for causing an injury if: (1) the injury would not have occurred without the conduct; and (2) the injury was a natural, probable, and foreseeable result of the conduct." Indiana Model Civil Jury Instruction 301. Volvo argues that the standard is "but-for" causation—that the injury be directly related to the alleged violation. These are simply different ways of saying the same thing.

SO ORDERED: 7/20/15

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification